A. Louis **CANUT**, etc., et al., **Plaintiffs**,

v.

David I. **LYONS**, Jr., et al., **Defendants.**

A. Louis **CANUT**, etc., et al., **Plaintiffs**,

v.

Charles L. **ABRAHAMS** et al.,
**Defendants.**

Civ. Nos. 77–1397–RJK, 77–2864–RJK.

United States District Court,
C. D. California.

Dec. 14, 1977.

---

Buchalter, Nemer, Fields & Chrystie, Howard P. Miller, Mark A. Neubauer, Richard D. Bronner, David W. Levene, Los Angeles, Cal., for plaintiffs.

Feldman, Waldman & Kline, Richard L. Jaeger, Linus S. Masouredis, San Francisco, Cal., for defendants David I. Lyons, Jr. and Aileen McDonald.

Benton R. Fonner, Los Angeles, Cal., for defendant Margaret Ann White.

E. Belmont Herring, Santa Monica, Cal., for defendant Bradford J. Erickson.

Sullivan, Jones & Archer, Miles W. Newby, Jr., Los Angeles, Cal., for defendants Mario Ribeiro, Irving R. Stevens, Richard L. Robinson, Carl Herrgord and Kenneth A. Carter.

Zobrist, Garner & Garrett, Duane H. Zobrist, Robert S. Schulman, Los Angeles, Cal., for defendants Donald Tracy Rumford, Irving N. Fisher and Loan Corp.

Lee B. Stanton, Glendale, Cal., for defendant Robert Ambrose.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

Motions to dismiss were filed by defendants in each of these actions. *Canut v. Lyons, et al.,* CV 77–1397 and *Canut v. Abrahams, et al.,* CV 77–2864. Since they involve identical issues, they will be treated together in this Memorandum of Decision and Order. The Order will apply to each action separately.

The genesis of these actions is the sale of limited partnership interests to numerous investors, from November 1974 through November 1976. The complaints allege that the sale of limited partnership interests was part of a fraudulent scheme which the defendants either set up or aided. The partnerships were ostensibly created to infuse capital into the operations of Lyons Oil Company of California (Lyons Oil), and Road Oil Sales, a subsidiary of Lyons.

Under each limited partnership agreement (76 agreements are involved), the individual investors were to be limited partners, and Road Oil Sales the general partner, in the exploration for oil and the drilling of oil wells in Kern County, California. In reality, the complaints allege, no wells were drilled; instead, the money was taken by David Lyons, the president and sole owner of Lyons Oil, and used to create a so-called "Ponzi scheme," by which early investors were paid dividends out of the funds contributed by later investors. Almost $6,000,-000 worth of limited partnership interests were sold, until November of 1976, when the Securities and Exchange Commission (SEC) brought an injunction proceeding that halted the operation. The SEC action, which was heard in Judge Pregerson's court in this district, ended with the grant of a

permanent injunction against the further sale of limited partnership interests, and the appointment of A. Louis Canut as conservator for Lyons Oil, Road Oil Sales, and the Lyons Oil Company Limited Partnerships.

Canut filed these actions in his capacity as conservator for the various entities. The complaints seek money damages and injunctive relief for violations of the federal securities laws, and California Corporations Code provisions, as well as stating a number of state common law theories of recovery, including fraud, breach of fiduciary duty, malfeasance, misfeasance, misappropriation, and corporate mismanagement. In *Canut v. Lyons,* CV 77–1397, plaintiff names four defendants: David Lyons, owner and president of Lyons Oil; Bradford Erickson, individually and doing business as Sterling Securities, a broker-dealer of the limited partnership interests; Aileen McDonald, an officer-employee of Lyons Oil; and Ann White, an employee of Erickson's. In *Canut v. Abrahams,* CV 77–2864, some 27 individuals or entities are named as defendants, each of whom is alleged to have been involved in the sale of the partnership interests.

Defendants in both actions have brought motions to dismiss, on the grounds that (1) the conservator lacks standing to bring the actions under the federal securities laws, and (2) in the event the federal claims are dismissed, the Court should also dismiss the state claims for lack of pendent jurisdiction. For the reasons outlined below, the motions to dismiss in each case are granted.

1. *Standing to Sue Under the Federal Securities Laws*

■ The plaintiff-conservator has attempted in both actions to set forth claims for damages under the federal securities laws. In particular, the first three claims for relief in *Lyons,* and the first two claims for relief in *Abrahams,* are for violations of Sections 5, 12, 15 and 17, respectively, of the Securities Act of 1933, Sections 10(b) and 20, respectively, of the Securities Exchange Act of 1934, and Rule 10(b)–5 pro-

mulgated under the 1934 Act (15 U.S.C. §§ 77e, 77*l*, 77*o*, 77q, 78j, 78t, and 17 C.F.R. 240.10b–5, respectively).

The courts have restricted standing to sue for damages under the securities laws to buyers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Furthermore, as plaintiff admits in his memorandum opposing dismissal in *Lyons,* even sellers are not accorded standing under Sections 5, 12 and 15 of the 1933 Act, nor under Section 20 of the 1934 Act; only purchasers may sue under those sections. *See, Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir. 1967). To maintain the claims under the federal securities laws, then, plaintiff must show that he is either a purchaser (in which case he may sue under all of the sections) or a seller (in which case he may sue under either Section 10(b) of the 1934 Act or Section 17 of the 1933 Act) of the securities in question. Defendants do not challenge plaintiff's ability to represent his estate on any federal claims which it may have; rather, they assert that the estate of the conservator does not have any federal causes of action.

The conservator purports to bring the actions on behalf of Lyons Oil, Road Oil Sales, the limited partnerships, and the limited partnership investors. It is axiomatic that the conservator's power is derived from and limited by the order of the court appointing him; he may assert only claims which arise in favor of his estate. The order of appointment in this case empowered the conservator to take control of and manage the assets under the control of Lyons Oil, Road Oil Sales, the Lyons Oil Company Limited Partnerships, and their subsidiaries and affiliates. See Amended Final Judgment of Permanent Injunction and Order Appointing Temporary Conservator, pp. 8–9, filed in CV 76–3460–HP, *Securities and Exchange Commission v. Lyons Oil Co.,* November 16, 1976. The order does not grant the conservator power

with respect to the individual investors in the partnerships. Plaintiff asserts that the language in the order which charges him with "protect[ing] the interests of the investors" (*Id.,* at page 9) gives him power to sue in their behalf. The plaintiff is confusing the duty of the conservator with his power to act.

The conservator's duty to protect the interests of the investors is carried out through his powers over the conservatorship estate. His powers are limited to that estate, which does not include the individual investors, but is limited to the corporate and partnership entities. As neither the corporations nor the partnerships were purchasers of the limited partnership interests, the conservator may not bring an action under those sections of the securities laws which limit standing to sue to purchasers of securities, namely Sections 5, 12 and 15 of the 1933 Act, and Section 20 of the 1934 Act.

Parenthetically, it should be noted that the complaints contained language suggesting that the claims amounted to a class action. The complaints recite that the actions are brought "on behalf of all holders of Limited Partnership interests . . . who are so numerous that it is impracticable to bring them all before the court." See *Lyons* complaint, page 3 (filed 4/18/77); *Abrahams* complaint, page 3 (filed 8/1/77). Plaintiff does not directly assert that these are class actions, however. If a class action were alleged, the plaintiff could not satisfy the requirements which a class representative must meet under F.R.C.P. Rule 23. First, the plaintiff is not a member of the class of investors who purchased the limited partnership interests. Second, plaintiff's conservatorship duties would conflict with his pursuit of claims on behalf of the class, because as conservator, the plaintiff is charged with managing and preserving the assets of the corporate and partnership entities, and as class representative, the plaintiff would be attempting to secure those same assets on behalf of the investors in the limited partnerships.

Although the plaintiff-conservator is not a purchaser who can sue for damages under the securities laws, he may still maintain these actions if he qualifies as a seller under Section 17 of the 1933 Act, of Section 10(b) of the 1934 Act (and Rule 10(b)–5 promulgated thereunder). *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). As conservator, plaintiff is bound by the court order appointing him to prosecute all claims on behalf of the estate of conservatorship. Thus, if any of the entities comprising his estate has a cause of action, then plaintiff may bring the action on behalf of the entity. Neither Road Oil Sales nor the limited partnerships bought or sold the securities involved here, so neither may maintain an action under the *Blue Chip* rule. Lyons Oil was a seller of the partnership interests, however, so the conservator may maintain an action in its behalf, if the corporation's sale of securities gave it an action under the statutes. In this case, the corporation does not have an action under Section 17, Section 10, or Rule 10(b)–5, because it has suffered no damages. On the contrary, Lyons Oil was the beneficiary of the alleged fraud perpetrated here. Plaintiff cites *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195 (5th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961), for the proposition that an equity receiver may bring a 10(b)–5 action on behalf of a corporation which had issued worthless securities. In *Hooper,* however, the corporation had been damaged, because it had received spurious assets for its shares as a result of a fraud. Here, Lyons Oil, rather than being injured, has actually benefited from the alleged fraudulent devices, because the monies involved went to Lyons Oil. *Cf. Thomas v. Roblin Industries, Inc.,* 520 F.2d 1393 (3d Cir. 1975), where the court denied standing to a trustee in bankruptcy who neither bought nor sold shares, and who represented a corporation which had suffered no damage in a fraud.

In summary, plaintiff does not represent aggrieved buyers of securities by reason of the limitations to his estate of conservatorship. Nor does he represent a seller who

has been damaged as a result of securities laws violations. Thus, under the rule stated in *Blue Chip Stamps,* the plaintiff has no standing to maintain the first three claims for relief in *Canut v. Lyons,* CV 77–1397, or the first two claims for relief in *Canut v. Abrahams,* CV 77–2864.

### 2. *The State Law Claims*

■ Having decided that the conservator may not pursue the federal claims, the Court must next determine whether the state law claims should also be dismissed. Plaintiff argues that the Court has original jurisdiction over the state law claims, and that dismissal of the federal claims does not bar the maintenance of the state causes of action. He cites the following passage from Moore's treatise in support of his proposition:

> "A federal equity receiver can sue in the court of his appointment, whether primary or ancillary, on any cause of action arising in favor of the debtor before the receivership or any cause of action arising in favor of the receiver without showing independent jurisdictional grounds. 'When an action is commenced by a receiver . . . to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary . . . and . . . jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction upon which the main suit rested.'"

7 Moore's Federal Practice ¶ 66.07[3], pp. 1938–39 (2d ed. 1975), *quoting, Pope v. Louisville, New Albany & Chicago Ry. Co.,* 173 U.S. 573, 19 S.Ct. 500, 43 L.Ed. 814 (1899) [footnotes omitted]. The rule just stated would confer the appointing court with original jurisdiction over all actions brought by the receiver, as long as some nexus is demonstrated between the action filed and the suit wherein the receiver was appointed.

An examination of the cases upon which Moore relies for the rule demonstrates that the federal court's jurisdiction over a receiver's suits is ancillary, and hence discre-

tionary, rather than original. In *White v. Ewing,* 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67 (1895), cited by plaintiff in briefs and at oral argument, the plaintiff-receiver had petitioned the circuit court of his appointment for authority to institute state law claims against various persons who had executed promissory notes to the company which comprised the receiver's estate. The court granted the petition, the receiver instituted suit against the debtors in the circuit court, and judgment was ordered for the plaintiff. On appeal to the Supreme Court, the defendants challenged the jurisdiction of the circuit court to hear the suit, absent any independent basis for federal jurisdiction. The Court held that the suit by the receiver was "ancillary to the main suit, and as cognizable in the circuit court, regardless either of the citizenship of the parties or of the amount in controversy. . . ." 159 U.S. at 39, 15 S.Ct. at 1019. The Court did not rule, as plaintiff urges, that a federal court *must* hear any action instituted by the receiver; rather, it held that such an action was "cognizable." "Cognizable" is defined as "capable of being judicially heard and determined." Webster's Third New International Dictionary, 440 (1966). Nothing in the definition is synonymous with mandatory or compulsory. Furthermore, the Court described the jurisdiction of the receiver as "ancillary," a type of jurisdiction which is not mandatory, but discretionary with the court. *Blake v. Pallan,* 554 F.2d 947, 958 (9th Cir. 1977).

The other case cited and relied upon by plaintiff is *Pope v. Louisville, New Albany & Chicago Ry. Co.,* 173 U.S. 573, 19 S.Ct. 500, 43 L.Ed. 814 (1899). In that case, the issue for decision was whether the decree of the Court of Appeals was final, and thus not reviewable under the Act of March 3, 1891, Section 6. Plaintiff-receiver had filed an action in federal court against defendant railroad to enforce the claims of his estate to certain property. State law claims were asserted, and the plaintiff had obtained leave of the court of his appointment to file the claims. After a money decree in plaintiff's favor, the Court of Appeals for the Seventh Circuit ultimately reversed the

lower court and ordered the cause dismissed. The plaintiff appealed to the Supreme Court, arguing that the jurisdiction of his (the receiver's) cause of action was founded not only on diversity of citizenship (in which case the determination of the Court of Appeals was final), but also because of the ancillary nature of the suit (in which case the Supreme Court could hear the appeal). The Court dismissed the appeal, holding that the jurisdiction of the ancillary matter was entirely dependent upon the jurisdiction in the suit in which the receiver was appointed, and that since jurisdiction of the main action was based on diversity, jurisdiction of the receiver's ancillary matter must also be based on diversity. The Court refuted the suggestion that the fact of appointment was enough to confer federal jurisdiction on all claims brought by a receiver:

"We cannot accept the suggestion that the mere order of a federal court, sitting in chancery, appointing a receiver on a creditor's bill, not only enables the receiver to invoke Federal jurisdiction, but to do this independently of the ground of jurisdiction of the suit in which the order was entered."

173 U.S. at 578–79, 19 S.Ct. at 502. Nothing in *Pope* suggests that the appointment of a receiver by a federal court mandates that suits brought by the receiver alleging non-federal claims be heard in the court of appointment.

Cases involving the right of a federally appointed equity receiver to exercise removal jurisdiction support the conclusion that a federal court's jurisdiction over a receiver's suits is ancillary, and not original. *Gay v. Ruff,* 292 U.S. 25, 54 S.Ct. 608, 78 L.Ed. 1099 (1934); *Gableman v. Peoria, Decatur & Evansville Ry. Co.,* 179 U.S. 335, 21 S.Ct. 171, 174, 45 L.Ed. 220 (1900). In *Gableman,* for example the receiver of a railroad company, appointed by a circuit court, was sued in state court on a negligence action. He was granted removal jurisdiction by the circuit court, and the plaintiff moved to remand. The remand motion was denied, and the plaintiff appealed to the Supreme Court. The Court held that the circuit court was without jurisdiction:

"The question is whether the bare fact that the appointment of this receiver was by a Federal Court makes all actions against him cases arising under the Constitution or laws of the United States, notwithstanding [that] he was appointed under the general equity powers of courts of chancery, and not under any provision of that Constitution or those laws; and that his liability depended on general law, and his defense does not rest on any act of Congress. We are of opinion that this question must be answered in the negative."

179 U.S. at 340, 21 S.Ct. at 173.

The conclusion to be drawn is that a federal court has ancillary, not original, jurisdiction over suits brought by its receiver. Since "ancillary jurisdiction is also a 'doctrine of discretion,'" a court may decline to hear claims which a federally-appointed equity receiver presents, if those claims do not have an independent federal jurisdictional basis. *Blake v. Pallan,* 554 F.2d 947, 958 (9th Cir. 1977); *cf., United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

No definitive test exists in this circuit to determine whether exercise of ancillary jurisdiction is proper in a particular case. However, reference may be made to the Supreme Court's discussion of the closely-related doctrine of pendent jurisdiction in *United Mine Workers v. Gibbs, supra.* There the court enumerated a number of factors which a trial court should consider in deciding whether to exercise its pendent jurisdiction including "considerations of judicial economy, convenience and fairness to litigants," and the avoidance of needless decisions of state law. 383 U.S. at 726, 86 S.Ct. at 1139. Since the federal claims asserted in these complaints are to be dismissed for lack of standing, judicial economy does not necessitate that this court hear the receiver's state law claims. The local actions are better brought in State court, so that questions of California law such as are here presented may be decided by the California courts.

Accordingly, IT IS ORDERED that the complaints in each of these cases be dismissed in their entirety. The federal claims are dismissed for lack of standing under the federal securities laws; since jurisdiction of the state law claims is ancillary, the Court, in its discretion, declines to exercise jurisdiction over those claims. The Court, *sua sponte,* dismisses the claims against those defendants named in these actions who have not joined in the motions, and dismisses any counterclaims asserted for lack of an independent jurisdictional basis. Each dismissal is ordered without prejudice to its being renewed in a state court.