**Edmund E. FLEMING, Receiver, U.S. Investment Co., Ltd. and Herbert J. Kent, Plaintiffs,**

**v.**

**BANK OF BOSTON CORPORATION, Defendant.**

**Edmund E. FLEMING, Plaintiff,**

**v.**

**LIND–WALDOCK & COMPANY, Defendant.**

Civ. A. Nos. 84–1076–WF, 84–1273–WF.

United States District Court, D. Massachusetts.

July 18, 1989.

Edmund E. Fleming, Boston, Mass., for plaintiffs.

M. Joseph Hameline, John M. Connolly, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., Daniel A. Clune, Jerrold E. Salzman, Freeman, Freeman & Salzman P.C., Chicago, Ill., for Lind–Waldock & Co.

Jon E. Hayden, and Joseph L. Kociubes, Bingham, Dana & Gould, Boston, Mass., for Bank of Boston Corp.

WOLF, District Judge.

## I. INTRODUCTION

These related cases are each before the court on similar motions to intervene by

Barry Breech on behalf of a class that would include "all persons and other legal entities who paid over money to U.S. Investment Co., Ltd. ("USIC") for the purposes of engaging in the purchase and sale of Commodity Futures Contracts." Motion of the Intervenor for Certification of a Class at 1. Edmund Fleming, the court appointed Receiver for USIC, now seeks to serve also as counsel for the putative class. As described below, the motions to intervene are denied because, among other things, they are untimely.

## II. BACKGROUND

On April 24, 1981, the Commodity Futures Trading Commission commenced a civil action against USIC and Herbert J. Kent, the President of USIC, in the District of Massachusetts. *Commodity Futures Trading Commission v. USIC*, C.A. No. 81–070–Mc. On June 5, 1981, Plaintiff Edmund E. Fleming was appointed by Judge John McNaught as Equity Receiver for USIC. Fleming was authorized to have full power:

> to prosecute all claims, choses-in-action and suits in equity *on behalf of defendant USIC* and appear and take necessary or appropriate action in any suit, proceeding or negotiations wheresoever situated, in order to represent and protect the interests of the equity receivership.

Final Judgment for Permanent and Ancillary Relief at 3–4 (emphasis added).

### A. *The Claims Against the Bank of Boston*

The action against the Bank of Boston arises out of three checking accounts Kent opened on behalf of USIC at the Bank of Boston in June, 1979.

In the original complaint, filed April 24, 1984 against the Bank of Boston, the Receiver alleged that between July, 1979 and April 24, 1981, Kent operated "an illegal scheme to defraud investors in the commodities market using USIC as the vehicle for such fraud." Complaint at ¶ 6. The Receiver claimed that Kent "converted over 6.5 million dollars of the investors' money to his own use," Complaint at ¶ 15,

and that the Bank aided and abetted Kent's fraudulent scheme "by allowing Kent to utilize its services," Complaint at ¶ 16, by "acting as a reference for Kent and USIC," ¶ 19, and by having a "representative speak with potential investors and provide information and reassurance so that these individuals were induced into investing in the fraudulent scheme." Complaint at ¶ 20.

On April 29, 1985, the Receiver filed an amended complaint against the Bank to assert claims against the Bank of Boston on behalf of a putative class of USIC investors.

On June 15, 1987, this court granted the Bank of Boston's motion for summary judgment on the grounds that the Receiver lacked standing to assert the claims presented on behalf of USIC customers. The reasons for this decision were described in detail in an oral opinion rendered at the June 15, 1987 hearing. In essence, however, this court found that receivers generally do not have the authority to represent investors; Fleming explicitly requested such authority from Judge McNaught, but was not granted it; and Fleming, therefore, was not entitled to maintain the class claims he brought on behalf of investors against the Bank of Boston. *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 429–30, 92 S.Ct. 1678, 1685–86, 32 L.Ed.2d 195 (1972); *Canut v. Lyons*, 450 F.Supp. 26, 28 (C.D.Cal.1977) ("It is axiomatic that [a receiver's] power is derived from and is limited by the order of the court appointing him.").

The entry of judgment for the Bank of Boston, however, was stayed for 60 days to permit the Receiver to seek again from Judge McNaught authority to act on behalf of investors or to file appropriate, verified papers demonstrating that he had been previously authorized to assert claims on behalf of USIC investors.

The Receiver did not, however, obtain from Judge McNaught expanded authority to represent investors or file anything to suggest that this court was mistaken in finding that he lacked such authority.

Rather, on September 3, 1987, Fleming, as counsel for the proposed intervenor and for the putative class, filed a motion of Mr. Breech, a USIC investor, to intervene and assert claims on behalf of the investor class. The Bank of Boston opposed this motion.

### B. *Lind–Waldock*

The action against Lind–Waldock arose out of an account for commodity trading opened by USIC in July, 1979. The Receiver alleged that all of the funds in the USIC account came from investors in USIC. He claimed that Lind–Waldock violated the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, and "negligently ... breach[ed] its duties to USIC and its customers" by failing to segregate the funds of individual investors. Second Amended Complaint at ¶ 32. The plaintiff also alleged Lind–Waldock knew or should have known that the funds forwarded to it by Kent were the funds of third parties, and that Kent and USIC were not authorized under the Commodity Exchange Act to accept and handle the funds of third parties. Fleming sought to hold Lind–Waldock liable for losses of approximately $2,500,000 and for $451,000 in commissions deducted from the account between July, 1979 and April 24, 1981.

The Receiver filed the original complaint against Lind–Waldock on April 10, 1984. In his Second Amended Complaint, filed January 9, 1985, the Receiver for the first time alleged class claims on behalf of USIC investors and purported to represent "all persons and other legal entities who paid over money to USIC for the purpose of engaging in the purchase and sale of Commodity Future contracts and whose funds were part of those funds paid over to the defendant Lind–Waldock...." Second Amended Complaint at ¶ 1.

For the reason described in an oral opinion rendered on August 26, 1987, this court granted defendant Lind–Waldock's motion to dismiss. As in the action against the

Bank of Boston, the court found that the Receiver lacked standing to assert individual or class claims on behalf of USIC customers. Leave was not in this case granted to permit the Receiver to seek authority to act on behalf of investors. Thus, for practical purposes the Lind–Waldock case was closed on August 26, 1987.

Nevertheless, Fleming, once again as counsel for the proposed intervenor and for the putative class, filed a Motion of Mr. Breech to intervene and assert a claim against Lind–Waldock on behalf of the investor class. Lind–Waldock opposed this motion.

## III. DISCUSSION

### A. *Statute of Limitations*

In considering the timeliness of Breech's motion to intervene, it is important to recognize the implications of the relevant statute of limitations. If Breech had on September 3, 1987, filed new actions against the Bank of Boston and Lind–Waldock, alleging tort claims and violations of the Commodity Exchange Act, they would have been barred by the statute of limitations, which would be no more than three years.[1]

The Commodity Exchange Act had no statute of limitations provision prior to 1983, when a two year period of limitation was enacted. 7 U.S.C. § 25(c). Previously it was necessary to borrow a statute of limitation from an analogous state statute. *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir.1978). All of the non-statutory claims against the Bank of Boston and Lind–Waldock were based on tort theories, such as fraud, conversion and negligence. Accordingly, these tort claims are governed by Massachusetts' three year statute of limitations. Mass.Gen.Laws ch. 260, § 2A. Several district courts have in well-reasoned opinions decided that federal securities law actions brought in Massachusetts should be governed by a two year statute of limitations. *See Gaudette v. Panos*, 644 F.Supp. 826, 836–37 (D.Mass.1986), *modified on*

---

1. In Plaintiffs' Opposition to [the Bank of Boston's] Motion for Summary Judgment, plaintiff stated that "[t]here is no claim that [the Bank of Boston] violated the Commodity Exchange Act." The proposed intervenor, however, appears to seek to assert such a claim. Complaint of Intervenor ¶¶ 8, 11, 16, 17.

*other grounds,* 650 F.Supp. 912 (D.Mass. 1986); *Abelson v. Strong,* 644 F.Supp. 524, 530–32 (D.Mass.1986). The Court of Appeals for the First Circuit, however, has indicated that the three year period established by Mass.Gen.Laws ch. 260, § 2A should be applied to federal securities fraud cases. *General Builders Supply Co. v. River Hill Coal,* 796 F.2d 8, 11 n. 2 (1st Cir.1986). Thus, this court assumes for the present purposes that a three year statute of limitations would be applicable to the proposed intervenors' putative class claims against the Bank of Boston and Lind–Waldock.

### B. *Rule 24 Intervention*

Breech argues that he should be allowed to intervene as of right or, in the alternative, permissively. The right to intervene in a federal court action is governed by Fed.R.Civ.P. 24. Paragraphs (a) and (b) of the Rule, which provide for intervention of right and for permissive intervention respectively, state:

> (a) *Intervention of Right.* Upon *timely* application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> (b) *Permissive Intervention.* Upon *timely* application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to

the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. (Emphasis added).

To intervene as of right, a petitioner must meet four requirements: "(1) the application must be timely; (2) the petitioner must claim 'an interest relating to the property or transaction which is the subject of the action;' (3) the petitioner must be 'so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest;' and (4) he must show that the applicant's interest will not be adequately represented by existing parties." *Moosehead Sanitary District v. S.G. Phillips Corp.,* 610 F.2d 49, 52 (1st Cir.1979). Timeliness is also required for permissive intervention, which a court may grant when the applicant's claim has a question of law or fact in common with the main action.

▇ The determination of timeliness is within the discretion of the trial court. *Garrity v. Gallen,* 697 F.2d 452, 455 (1st Cir.1983); *Pierce v. MacKay Radio & Tel. Co.,* 154 F.Supp. 157 (D.Mass.1957) (application to intervene denied because motion "filed almost three years after the beginning of the action, is far from timely"). As the Court of Appeals for the First Circuit has stated, "[t]he purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." *Culbreath v. Dukakis,* 630 F.2d 15, 22 (1st Cir.1980). "The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion." *Garrity,* 697 F.2d at 455.

The Supreme Court has indicated that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York,*

413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); *see United States v. Metropolitan Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir.1989). In *Culbreath*, the Court of Appeals for the First Circuit suggested that four factors be considered in evaluating timeliness: (1) the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene, 630 F.2d at 20; (2) the prejudice to existing parties due to the applicants' failure to petition for intervention promptly, *id.* at 21; (3) the prejudice that applicants would suffer, if they were not allowed to intervene, *id.* at 22; and (4) unusual circumstances militating for or against intervention, *id.* at 24. *See United States v. Metropolitan Dist. Comm'n*, 865 F.2d at 5; *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988); *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir.1987).

■ The court has considered the foregoing principles and determined Breech's motions to intervene are fatally flawed because they are, among other things, untimely.

### 1. *Applicant's Knowledge of His Interest in the Litigation*

In the nearly identical memoranda supporting his motions to intervene, Breech suggests that the lateness of his intervention requests was caused by the investors' reliance on the Receiver to represent their interests against the defendants. Memoranda in Support of Motion to Intervene at 3. Breech seems to suggest that if he and other investors had known that Fleming could not represent their interests, they would have sought intervention in a timely manner.

Breech's suggestion that he and other members of the putative class of USIC investors reasonably relied upon the Receiver to assert their claims is without merit. Their purported claims arose for statute of limitations purposes no later than April 24, 1981, the date on which Fleming was appointed Receiver for USIC. Apparently no USIC investor filed either individual or class claims against the Bank of Bos-

ton or Lind–Waldock before the statute of limitations ran. The Receiver filed complaints against the Bank of Boston and Lind–Waldock in April, 1984, days before the statute of limitations expired. Neither such complaint, however, sought to allege claims of investors. Rather, the Receiver did not file an amended complaint attempting to assert investors' claims against Lind–Waldock until January, 1985, or against the Bank of Boston until April, 1985.

In view of the foregoing the court doubts the suggestions that Breech or other investors were actually relying on the Receiver to litigate their claims against Lind–Waldock or the Bank of Boston before the statute of limitations expired no later than April, 1984. In any event, such reliance would not have been reasonable, in part because the Receiver had not included their claims in the original complaint. In April, 1984 the investors knew or should have known of the claims Breech now seeks to maintain *and* that the Receiver had not asserted them. Yet neither Breech, nor to the court's knowledge any other investor, sought to assert class claims independently, or promptly moved to intervene in the Receiver's actions against the Bank of Boston or Lind–Waldock.

### 2. *Prejudice to the Applicants and the Defendants*

Breech now contends that failure to grant his request to intervene would impair the rights of the investors because "[t]he Statute of Limitations has ran [sic] with regard to any individual claims which the investors may bring against [either defendant] to recover those funds which the investors and the receiver assert were dissipated by said defendant." *Id.* The case on which Breech relies as authority for his claim that this factor justifies intervention now, *Natural Resources Defense Council v. United States Nuclear Regulatory Commission*, 578 F.2d 1341 (10th Cir.1978), does not address the statute of limitations issue. Nor does there appear to be any other authority for the proposition that the expiration of a statute of limitations is the

sort of prejudice to an absent party that Rule 24 should be utilized to redress in the circumstances of this case.

By contrast, there would be significant, cognizable prejudice to the defendants if intervention were allowed to permit the assertion the class claims in these cases. As discussed later in this opinion, absent a tolling of the statute of limitations, the individual and class claims Breech seeks to assert would be barred by the statute of limitations. Statutes of limitations are, among other things, designed to avoid litigation of stale claims and unfairness to defendants. *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). It would, therefore, be prejudicial to require the Bank of Boston and Lind–Waldock to attempt to litigate such claims now.

Moreover, the defendants have a legitimate interest in finality. The defendants vigorously litigated their motions to dismiss or for summary judgment. The court carefully considered the competing contentions of the parties and decided that the defendants were entitled to judgment. The Court of Appeals for the First Circuit has indicated that intervention is particularly inappropriate where a case has "reached the stage where the case could be decided on motions for summary judgment." *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 142 (1st Cir.1982). These cases are well past the summary judgment stage. To reopen them now would cause "disruption of painstaking work by the parties and the court." *Culbreath*, 630 F.2d at 22. It would also injure the legitimate and reasonable expectations of the defendants that they had prevailed in their respective cases. Indeed, as summary judgment has been granted to the Bank of Boston and Lind–Waldock's motion to dismiss has been allowed, it appears that there are not now any pending actions in which Breech could be properly allowed to intervene. *See Applebaum v. State Farm Mutual Automobile Insurance Co.*, 109 F.R.D. 661 (M.D. Pa.), *aff'd without op.*, 806 F.2d 251 (3rd Cir.1986).

### 3. *Unusual Circumstances*

There are no unusual circumstances suggesting that this otherwise untimely request to intervene ought to be allowed. As indicated earlier, if Breech and other investors were indeed relying on the Receiver to assert their claims against the Bank of Boston or Lind–Waldock, that reliance was unreasonable. To the extent, if any, that they are injured by a denial of Breech's requests to intervene, they are suffering from a self-inflicted wound.

### C. *The Implications of American Pipe*

The conclusion that it would be inappropriate to allow Breech's motions to intervene is not qualified by consideration of the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the subsequent case of *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), and their progeny.

*American Pipe* was a federal antitrust class action brought by the state of Utah on behalf of itself and other public entities. The state had filed the action eleven days before the running of the statute of limitations. After the district court denied class certification, a number of purported class members moved to intervene. The Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554, 94 S.Ct. at 766. The Supreme Court noted with approval that the Court of Appeals had denied certification because the plaintiffs failed to demonstrate under Fed.R. Civ.P. 23(a)(1) that "the class is so numerous that joinder of all members is impracticable," rather than for reasons such as "lack of standing of the representative." 414 U.S. at 553, 94 S.Ct. at 766. The Supreme Court reasoned that unless the statute of limitations was tolled by filing, potential class members would be required to file motions to intervene to protect them-

selves in the event that the class was not certified. *Id.* at 553, 94 S.Ct. at 766. A contrary rule would frustrate the goal of judicial economy embodied in Rule 23, which authorizes the class action device. *Id.*

The *American Pipe* rule was extended to those members of the putative class who choose to file their own individual actions (as opposed to intervening) in *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." 462 U.S. at 354, 103 S.Ct. at 2397.

The Supreme Court has not decided whether the *American Pipe* rule also applies to subsequent class actions brought by different representatives. In his concurrence in *Parker,* Justice Powell observed that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse." 462 U.S. at 354, 103 S.Ct. at 2398 (Powell, J., concurring). The Court of Appeals for the Second Circuit has stated that all courts that have addressed this question "have found that the *American Pipe* tolling rule does not apply to permit putative class members to file a subsequent class action." *Korwek v. Hunt,* 827 F.2d 874, 878 (2d Cir.1987). In *Smith v. Flagship Int'l,* 609 F.Supp. 58 (N.D.Tex.1985), the court concluded that the reasoning of *Parker* did not allow for "a potentially endless succession of class actions, each tolling the [applicable statute] for its successor." 609 F.Supp. at 64. Similarly, the Court of Appeals for the Fifth Circuit in *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334 (5th Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986), refused to extend the holding in *American Pipe* to successive class actions. Rather, the Court of Appeals for the Fifth Circuit concluded that there was "no authority for [the] contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely." 765 F.2d at 1351.

Breech apparently recognizes that the foregoing cases suggest that a new action alleging claims of the putative class would be barred by the statute of limitations. The motions to intervene, therefore, are evident efforts to circumvent this bar. This circumvention, however, is not appropriate and in this case will not be permitted. As Judge Robert Keeton of this district court stated in language equally applicable and compelling in the instant case:

I am troubled by the potential abuse of a rule extending class action tolling to all cases in which certification is denied for lack of standing. Although, as the court concluded in [*Rose v. Arkansas Valley Environmental and Utility Authority,* 562 F.Supp. 1180 (W.D.Mo.1983) ], lack of standing may not *per se* mandate an exemption from the application of the tolling rule, in certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule. I conclude that this practice is an impermissible use of intervention, akin to the improper use of intervention to manufacture jurisdiction. *See Applebaum v. State Farm Mut. Auto. Ins. Co.,* 109 F.R.D. 661 (M.D.Pa.) (intervention in purported class action denied after sole nominal plaintiff's individual claim was dismissed), *aff'd without op.,* 806 F.2d 251 (3rd Cir.1986; *cf. McClune v. Shamah,* 593 F.2d 482, 486 (3d Cir.1979) ("A motion for intervention is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."). I conclude that it would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation to permit the otherwise untimely intervention of proper class representatives.

*In re Elscint, Ltd. Securities Litigation,* 674 F.Supp. 374, 378 (D.Mass.1987). In the

instant cases, as in *Elscint*, if intervention were now allowed, not only would the original plaintiff, the Receiver, not be able to serve as a class representative, he would not even be a member of the putative class. *Id.* at 379. Thus, to allow Breech's motions to intervene would be to sanction and encourage abuse of the class action provisions of federal law. This would plainly be inappropriate.

### D. *Other Grounds for Denial*

Although it would now be premature to decide finally whether, if intervention were allowed, Breech would be permitted to maintain his class claims, there are several evident problems which suggest the futility of Breech's proposed class action and, therefore, the lack of prejudice to the putative class as a result of the denial of the motions to intervene. One of the prerequisites to class certification is a finding that the class representatives will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). This determination requires, among other things, consideration of the adequacy of class counsel. *See In re First Commodity Corp. of Boston Customer Accounts Litigation*, 119 F.R.D. 301, 310 (D.Mass.1987). In this case Fleming is seeking to serve as class counsel and as Receiver for USIC. This presents an obviously impermissible conflict of interest. Members of the class would certainly have claims against USIC which would be potentially inconsistent with Fleming's duty as Receiver to manage and preserve the assets of the company. As counsel to the class representative, Fleming "would be attempting to secure those same assets on behalf of the investors...." *Canut v. Lyons*, 450 F.Supp. at 29. In these circumstances, it seems evident that Breech would not be able to obtain class certification because he would not satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23.

In addition, even if class certification were proper, this court would likely grant defendant Bank of Boston's motion to dismiss count I on the ground that plaintiff may not assert a private right of action for aiding and abetting a violation of the Commodity Exchange Act.[2] In count I of plaintiff's amended complaint, Fleming alleged that the Bank aided and abetted Kent's and USIC's violations of the Commodity Exchange Act. The proposed intervenor's complaint asserts a similar claim.

Prior to 1983, Section 13(a) of the Commodity Exchange Act provided the following:

> Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter ... may be held responsible in administrative proceedings under this chapter for such violation as a principal.

7 U.S.C. § 13c(a). On January 11, 1983, Congress deleted the words "in administrative proceedings" from § 13c(a). Thus, as noted in *Johnson v. Chilcott*, 590 F.Supp. 204 (D.Colorado 1984), "[o]nly since 1983, when Congress removed the express limitation of remedy, has there existed a private judicial remedy for aiding and abetting liability." 590 F.Supp. at 207.

Similarly, in *Bennett v. E.F.Hutton Co., Inc.*, 597 F.Supp. 1547 (N.D.Ohio 1984), the district court refused to apply the private right of action retroactively, arguing that a "statute which creates a new right is deemed substantive and is applied prospectively unless its language evidences a legislative intent that it be applied retroactively. No evidence of Congressional intent that the amended § 13c apply retroactively is cited. In its absence, all claims under the statute must fail." 597 F.Supp. at 1553 (citations omitted). Fleming has not cited authority to the contrary.

---

**2.** In his opposition to the Bank of Boston's Motion for Summary Judgment, Fleming argued that he meant this claim to be based on a common law fraud claim, not aiding and abetting under the Commodity Exchange Act. His Amended Complaint and the proposed intervenor's complaint allege that the Bank aided and abetted Kent's fraudulent scheme. These complaints allege that the Bank knew USIC did not comply with the requirements of the Commodity Exchange Act.

Thus, it appears that neither the Receiver nor the putative class of investors has a private right of action to bring an aiding and abetting claim and dismissal would likely be granted on Count I of the proposed intervenor's complaint.[3]

## IV. ORDER

For the foregoing reasons, the motions to intervene are hereby DENIED.

---

**3.** Count I is the significant part of the action against the Bank of Boston. Count II seeks $7,700 as a result of the Bank's allegedly using investor funds to pay principal and interest on its loans to Kent.