Edmund E. FLEMING, et al.,
Plaintiffs, Appellees,

v.

LIND–WALDOCK & CO.,
Defendant, Appellee,

Barry Breech, Intervenor–Appellant.

Edmund E. FLEMING, et al.,
Plaintiffs, Appellants,

v.

LIND–WALDOCK & CO.,
Defendant, Appellee.

Nos. 90–1013, 90–1014.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1990.

Decided Dec. 19, 1990.

---

5. Were that the case, I would agree with the majority's selected date.

Barbara L. Moore, with whom Cooley, Manion, Moore & Jones and Edward E. Fleming, were on brief, for plaintiffs, appellants.

Jerrold E. Salzman, with whom Albert F. Ettinger, Scott R. Williamson, Freeman, Freeman & Salzman, John M. Connolly, H. Joseph Hameline, and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, were on brief, for defendant, appellee.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
ATKINS,* Senior District Judge.

BOWNES, Senior Circuit Judge.

The issues in this long-lived case are whether the district court erred in: 1) granting defendant-appellee Lind–Waldock & Company's motion to dismiss plaintiff-appellant Edmund E. Fleming's claims on behalf of U.S. Investment Company ("USIC") under Fed.R.Civ.P. 12(b)(6); 2) denying the plaintiff, equity receiver for USIC, standing as a putative class representative to initiate class actions against both Lind–Waldock & Company and Bank of Boston Corporation on behalf of USIC investors; 3) denying one such investor, Barry Breech, the right to intervene in Fleming's class actions after they had been dismissed; and 4) denying the plaintiff's contribution claim against Lind–Waldock.

After reviewing all prior decisions in this case, we affirm the district court's rulings. In regard to the issues of intervention and contribution, however, we reach the painstaking conclusions of the district court by slightly different routes.

## I. BACKGROUND

Plaintiff Edmund E. Fleming, the equity receiver for USIC, originally brought this action against defendant Lind–Waldock & Company on April 10, 1984, nearly three years after the latter had been notified by the Commodity Futures Trading Commission ("CFTC") of fraud involving Herbert J. Kent, the president and chief executive officer of USIC. On April 24, 1981, the CFTC's motion for a temporary injunction against USIC and Kent had been granted in *Commodity Futures Trading Comm'n. v. U.S. Investment Co.*, C.A. No. 81–1070–Mc (D.Mass.1981), and USIC's accounts at Lind–Waldock had been closed. From July of 1979 until April of 1981, Kent had maintained USIC accounts with Lind–Waldock and its predecessor, Riverside Commodity Corporation. These accounts were financed by investors in USIC though only Lind–Waldock, not USIC, was a Futures Commission Merchant.

In both the original and the first amended complaint, the plaintiff receiver sued on behalf of both USIC and its investors, claiming Lind–Waldock had violated the Commodity Exchange Act, 7 U.S.C. § 1 et seq. In his second amended complaint dated January 9, 1985, the plaintiff receiver also sought to assert a class action against Lind–Waldock on behalf of the investors with himself as representative of that class.

Receiver Fleming further sued for contribution from Lind–Waldock for shared liability arising from the investors' unpaid judgments entered against USIC. In a bench decision on August 26, 1987, the district court granted the defendant's motion to dismiss on the ground that this

* Of the Southern District of Florida, sitting by    designation.

second amended complaint failed to state a claim on which relief could be granted. On July 18, 1989, in a related ruling, the district court denied USIC investor Barry Breech's September 3, 1987, motions to intervene in the plaintiff receiver's two class actions. Fleming's class action against the Bank of Boston had been dismissed by summary judgment on June 15, 1987. These appeals arise from the district court's opinions and orders of August, 1987 and July, 1989. *Fleming v. Lind–Waldock & Co.*, C.A. No. 84–1076–WF (D.Mass. 1987); *Fleming v. Bank of Boston Corp.*, 127 F.R.D. 30 (D.Mass.1989), Comm.Fut.L. Rep. (CCH) P24,500.

## II. MOTION TO DISMISS

At the outset Fleming portrays the district court's decision to dismiss his underlying action as an erroneous application of Fed.R.Civ.P. 12(b)(6). He insists that the case merited the further scrutiny of a Fed. R.Civ.P. 56 summary judgment proceeding. Specifically, he claims that the district court erred in basing its decision on facts not alleged in the complaint, as well as facts for which there was no evidence. We find that the district court's conclusions were procedurally appropriate and substantively correct. We augment the district court's thorough decision in only a few respects.

It is well established that a Rule 12(b)(6) motion to dismiss and a Rule 56 summary judgment motion share a functional nexus. "[A] Rule 12(b)(6) motion to dismiss can be transformed by the court into a motion for summary judgment under Rule 56, (and vice versa)...." *Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir.1989) (citing C. Wright, A. Miller & M. Kane, 10 Federal Practice & Procedure Section 2713 (1983)). One fundamental difference between the two motions lies in the scope of the court's consideration. The grounds for a Rule 12(b)(6) dismissal comprise only the pleadings and no more. A Rule 56 summary judgment allows the court to consider matters "outside" the pleadings such as "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any...." Fed.R.Civ.P. 56.

Given the similar outcomes induced by these two rules, Fleming's desire to recharacterize the motion as a summary judgment may initially appear academic. The two motions, however, place different burdens on the parties at different times in the course of litigation. Consequently, the correct characterization may have a substantive impact on review. *Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d at 591. To this extent, Fleming's concerns have merit. As applied to the district court's opinion and order below, however, the distinction has no impact.

Fleming essentially misconstrues the nature of the burden imposed by the pleading requirements of Federal Rules of Civil Procedure. True, the threshold demands on the pleader are low. As we have recently stated, both the trial and appellate courts must

> accept the well-pleaded factual averments of the latest (second amended) complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause ... exempt[ing], of course, those "facts" which have since been conclusively contradicted by [plaintiff's] concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions, unsupportable conclusions, and "opprobrious epithets."

*Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). Nevertheless, it is also well established that the pleading requirements are "not entirely ... toothless." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Hence, the deference afforded to the plaintiff does not render the requirements meaningless. This generous approach to pleadings is further restricted by requiring that each general allegation be supported by a specific factual basis. The pleadings are not sufficient where the plaintiff rests on "subjective characterizations" or unsubstantiated conclusions. *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*,

461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). Despite the potential ambiguities, this court has plotted the dividing line between pleading adequate facts and inadequate conclusions.

Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called "inferences from," the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

*Dartmouth Review*, 889 F.2d at 16.

■ In addition, the necessary factual averments are required with respect to each material element of the underlying legal theory. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). This burden, of course, rests squarely upon the pleader; initial failure to satisfy the burden in no way obligates the district court to allow the parties an opportunity to offer matters outside the pleadings. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.

■ Accepting the alleged *facts* as true and viewing them in the light most favorable to the plaintiff, we find, as did the district court, that Fleming has failed to support adequately an essential element of his claim for relief. Fleming's allegations that USIC sustained injury from Lind–Waldock's actions are merely conclusions unsubstantiated by fact. The pleadings acknowledge that the USIC accounts held by Lind–Waldock were comprised solely of investor funds. Fleming, however, merely avers, without offering facts demonstrating the relationship between the accounts and the corporation, that USIC suffered injury as a result of losses to these accounts.

Despite having been granted the opportunity twice to amend his complaint, Fleming now insists that given further opportunity, he would recharacterize the relationship between the accounts and USIC. In short, he simply ignores the pleader's immediate burden. Without injury to USIC factually supported in the pleadings, the six conclusory counts alleging Lind–Waldock's wrongdoing all lack an essential element. The district court recognized that Fleming failed to satisfy his preliminary pleading burden and correctly dismissed Fleming's claims on behalf of USIC.

## III. STANDING

■ Next, Fleming challenges the district court's decision to dismiss his claims on behalf of the investors for lack of standing. At the time of his appointment as Equity Receiver in June of 1981, Fleming was empowered:

> to take into his immediate custody, control and possession all assets and property belonging to, or in the possession of, USIC and Kent ...

> to prosecute all claims, choses in action and suits in equity on behalf of defendant USIC and to appear and take necessary or appropriate action in any suit, proceeding or negotiations ... in order to represent and protect the interests of the equity receivership ...

> to seek and to act subject to further order of the Court in order to prevent irreparable loss, damage and injury to commodity customers and clients and to conserve and prevent the dissipation of funds.

*Commodity Futures Trading Comm'n. v. U.S. Investment Co.*, C.A. No. 81–1070–Mc (D.Mass.1981).

Receiver Fleming has insisted that the above allusion to "commodity customers and clients" expressly or impliedly authorized him to assert actions on behalf of USIC investors. In granting the defendant Lind–Waldock's motion to dismiss, however, the district court agreed with the defendant that " 'the order appointing the plaintiff as receiver does not authorize him to prosecute actions on behalf of individual investors.' " *Fleming v. Lind–Waldock & Co.*, C.A. No. 84–1076–WF (D.Mass.1987)

(quoting defendant's Memorandum in Support of Motion to Dismiss Second Amended Complaint at 9 n. 3). Hence this 1987 order denied standing to Fleming as representative of USIC investors: "'It is axiomatic that [a receiver's] power is derived from and limited by the order of the court appointing him....'" (quoting *Canut v. Lyons*, 450 F.Supp. 26, 28 (C.D.Cal.1977)). The district court further noted that the language of the 1981 order did not grant any such representational power to Fleming. Moreover, the judge who had written that 1981 order subsequently denied Fleming's later request for such authority.

■ Since 1935 it has been well settled that "the plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have." *McCandless v. Furlaud*, 296 U.S. 140, 148, 56 S.Ct. 41, 80 L.Ed. 121 (1935). In *McCandless*, Justice Cardozo "clearly emphasize[d] that the receiver in that case was suing on behalf of the corporation, not third parties...." In other words, the receiver can only make a claim which the corporation could have made. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429, 92 S.Ct. 1678, 1685, 32 L.Ed.2d 195 (1972) (citing *McCandless*, 296 U.S. 140, 56 S.Ct. 41).

Fleming attempts unsuccessfully to distinguish *McCandless* from *Caplin* and to deny its paternity of a long line of cases limiting the powers of equity receivers. The progeny of *McCandless* all affirm representation of the corporation and protection of its assets as the only purview of the receiver. *See, e.g., Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1515 (1st Cir.1987) (equating powers of trustee [in *Caplin*] and receiver; insisting equity receiver lacks standing to bring suit on behalf of investors); *Commodity Futures Trading Comm'n. v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1481 (10th Cir.1983) (warning that receiver can assert claims only for corporate fund, not "damages on the claims for the investors");

*Lank v. New York Stock Exchange*, 548 F.2d 61, 67 (2d Cir.1977) (insisting receiver "stands in shoes of corporation and can assert only those claims which corporation could have asserted"); *Johnson v. Chilcott*, 590 F.Supp. 204, 207–208 (D.Colo.1984) (disallowing receiver's standing to assert investors' claims when corporate interests not congruent with investors' interests);[1] *In re Investors Funding Corp. Secur. Litigation*, 523 F.Supp. 533, 540, 544 (S.D.N.Y.1980) (emphasizing need for "proximate causal connection" or "'but for' chain" between misrepresentations to investors and losses to corporate entity in order for trustee to assert investors' claims).

■ The funds allegedly mismanaged by Lind–Waldock in accounts established by Kent belonged entirely to investors, not to USIC. Hence, Fleming as equity receiver cannot assert these investors' claims. Nor can he succeed in a class action as a putative representative of these same investors. Here, as in *Canut*, 450 F.Supp. at 29, the "plaintiff [Fleming] is not a member of the class of investors." Moreover, his dual role as receiver for the corporation and representative of investors with claims against the corporation would present an inherent conflict: His "conservatorship duties would conflict with his pursuit of claims on behalf of the class...." *Id.* at 29.

As the district court pointed out in its August 26, 1987, order denying Fleming's assertion of a class action in his second amended complaint:

> In order to maintain a class action, plaintiff must, among other things, establish that he is an adequate representative of the putative class. Fed.R.Civ.P. 23(a). The plaintiff, however, is not a proper representative of the purported class in this case. Thus, plaintiff may not maintain this action by asserting the rights of others.

*Fleming v. Lind–Waldock & Co.*, C.A. No. 84–1076–WF (D.Mass.1987).

---

1. Two later proceedings in this case, *Johnson v. Chilcott*, 599 F.Supp. 224 (D.Colo.1984) and *Johnson v. Chilcott*, 658 F.Supp. 1213 (D.Colo. 1987), do not alter the original holding in regard to the limited power of an equity receiver.

## IV. INTERVENTION

■ On September 3, 1987, eight days after Fleming's petition to represent the investor class in its action against Lind–Waldock had been rejected by the court, Barry Breech, a USIC investor, moved to intervene in Fleming's two asserted class actions. The district court in a comprehensive opinion issued on July 18, 1989, 127 F.R.D. 30, which carefully considered all aspects of intervention in light of the case law in this circuit, denied the motions to intervene. It found that "Breech's motions to intervene are fatally flawed because they are, among other things, untimely." *Id.* at 34. Final judgment for the defendant issued two days later, July 20, 1989.

The Court has stated: "Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (footnotes omitted). *See also Garrity v. Gallen,* 697 F.2d 452, 455–56 (1st Cir.1983) (basing timeliness for intervention on all circumstances involved); *Culbreath v. Dukakis,* 630 F.2d 15, 17 (1st Cir.1980) (using four factors to determine timeliness).

In its opinion, the district court first considered the requirements of Fed.R.Civ.P. 24. It then fully explored the four *Culbreath* factors for evaluating timeliness:
(1) the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene, 630 F.2d at 20; (2) the prejudice to existing parties due to the applicants' failure to petition for intervention promptly, *id.* at 21; (3) the prejudice that applicants would suffer, if they were not allowed to intervene, *id.* at 22; and (4) unusual circumstances militating for or against intervention, *id.*
127 F.R.D. at 34. In assessing factor (1), the court pointed out that although the action was commenced in April of 1984, neither Breech nor any other investor asserted any class claims independently.

Likewise, no investor moved to intervene in Fleming's actions against the Bank of Boston and Lind–Waldock.

We agree with the district court that defendants would be seriously prejudiced if intervention were allowed five years after the commencement of Fleming's actions. Not only would intervention circumvent the statute of limitations, it would also negate the preparation and time spent by the defendants on their motions for dismissal and/or summary judgment. We hold the definite impression that Breech's intervention motions were a "last gasp" attempt by the intervenor and Fleming[2] to erase the handwriting on the wall. The implications of the carefully scripted dismissal order of August 26, 1987, were surely legible to both Breech and Fleming:

> [O]n August 26, 1987, this court granted defendant Lind–Waldock's motion to dismiss. As in the action against the Bank of Boston, the court found that the Receiver lacked standing to assert individual or class claims on behalf of USIC customers. Leave was not in this case granted to permit the Receiver to seek authority to act on behalf of investors. Thus, for practical purposes the Lind–Waldock case was closed on August 26, 1987.

127 F.R.D. at 32.

We also agree with the district court that there are no unusual circumstances here crying loudly, or even softly, for intervention. The district court did not abuse its discretion in denying intervention.

## V. CONTRIBUTION

According to the district court, Fleming's assertion of the right of contribution against Lind–Waldock was an attempt to establish injury to the corporation USIC, the only entity whose claims he could rightfully represent in his capacity as equity receiver. As discussed in the previous section, this limitation of an equity receiver's power has been firmly established in Supreme Court case law since *McCandless* in 1935, 296 U.S. 140, 56 S.Ct. 41, and has

---

**2.** Fleming was counsel for Breech and for the putative class.

been reiterated in the First Circuit as recently as *Boston Trading Group v. Burnazos* in 1987, 835 F.2d 1504.

Since the inception of the CFTC's action against Kent and USIC in 1981, more than 80 USIC investors have sued USIC under the Commodity Exchange Act; several judgments against USIC have been entered in district court. Lind–Waldock, however, has never been named as a defendant nor has it been impleaded in any of these actions. Significantly, Fleming has provided no relevant statutory authority to assert a claim for contribution on USIC's behalf.

▇▇ Fleming has instead asked the court to "fashion an equitable solution" based upon state law. He, however, misstates the issue when he belatedly appeals to Massachusetts law for contribution. The issue is not whether USIC investors could have sued Lind–Waldock under Massachusetts law; it is whether Fleming can employ the Massachusetts contribution statute to obtain contribution for yet unpaid claims which have been filed under a federal statute—the Commodity Exchange Act. On this contribution claim, federal law clearly governs.

The First Circuit has explicitly followed the Court's holding in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 650 (1981), that a right to contribution for liability arising from a violation of a federal statute is a matter of federal law. *Id.* at 90–91, 101 S.Ct. at 1580. In *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456 (1st Cir.1985), where the liability of federal agents as joint tortfeasors was in question concerning the right of contribution, we stated: "[I]t is clear that the basis of liability is federal law and not state common law." *Id.* at 465. Despite its dissimilar fact pattern from the instant case, *Ricci* emphasizes that "because this is a contribution action," the plaintiffs' statutory rights are limited to those alleged to have

been violated under the applicable federal statutes *only*. *Id.* at 465–66. Another recent contribution case illustrates the point more directly. In *Donovan v. Robbins*, 752 F.2d 1170 (7th Cir.1985), where a contribution claim was brought under ERISA, the Seventh Circuit held that state law was inapplicable:

> Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.

*Id.* at 1179.

Hence, we need not reach the complex issue of preemption of state law by federal law nor need we examine the Massachusetts contribution statute regarding the right of contribution in order to deny Fleming's claim.[3]

▇▇ There is no statutory right to sue for contribution under the Commodity Exchange Act. *See* 7 U.S.C. §§ 6b, 6d, 6o. *See also* Commodity Futures Trading Commission Act, Hearings on S. 2578, S. 2837 and H.R. 13113 Before the Senate Comm. on Agriculture and Forestry, pt. 3, 93d Cong., 2d Sess. 679 (1974). Indeed, Fleming has admitted that the Commodity Exchange Act does not specifically provide for such a right.

The Supreme Court has never recognized a "general federal right to contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 642, 101 S.Ct. 2061, 2068, 68 L.Ed.2d 500 (1981); *Northwest Airlines*, 451 U.S. at 96, 101 S.Ct. at 1583. *See also Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285, 72 S.Ct. 277, 279, 96 L.Ed. 318 (1952) (refusing to create right to maritime contribution and concluding that "the solution of this problem should await congressional action").

---

3. In its August 26, 1987 memorandum and order, the district court alternatively denied Fleming's contribution claim under Massachusetts law. We agree with the lower court that if the Massachusetts statute were applicable, as we find it is not, the right of contribution would exist "only in favor of a joint tortfeasor ... who has paid more than his pro rata share of the common liability...." M.G.L. c. 231B § 1(b). Fleming on behalf of USIC has made no payments to any investors.

■ Having rejected Fleming's state statutory claim and finding neither specific nor implied right to contribution under the CEA, we turn to consideration of a federal equitable right to contribution. The Court has frowned. upon application of equity principles to create a contribution right. Such an invocation "presuppose[s] a legislative intent to allow parties violating the law to draw upon equitable principles to mitigate consequences of their wrongdoing...." Instead, "in the context of one wrongdoer suing a co-conspirator, these [traditional equitable] standards similarly suggest that parties generally *in pari delicto* should be left where they are found." *Texas Industries*, 451 U.S. at 635, 101 S.Ct. at 2064. Following the Court's teaching, we hold that there is no federal equitable right to contribution.

## VI. CONCLUSION

We affirm the district court's dismissal, denial of standing, intervention and contribution. Costs on appeal are awarded to the appellee.