rights." *Glass v. Petro–Tex Chemical Corp.*, 757 F.2d 1554 (5th Cir.1985). That event in the present case occurred in April 1986 when plaintiffs were subjected to a reduction in their base wage rates. The court finds nothing unfair or harsh in requiring plaintiffs to have filed their complaint within three years of this event.

■ Plaintiffs' arguments notwithstanding, this result is consistent with the Fifth Circuit's application of the continuing violation doctrine to FLSA cases. Plaintiffs rely on *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973), and *Halferty v. Pulse Drug Co.*, 821 F.2d 261 (5th Cir.), *modified*, 826 F.2d 2 (5th Cir. 1987), for the very general proposition that all violations of the FLSA accrue with each paycheck. Plaintiffs argue that these cases, not *Lorance* and cases arising under statutes other than the FSLA, should control the present situation. However, a narrower reading of these Fifth Circuit cases than that urged by plaintiffs is more logical and consistent with the general rules regarding the application of the continuing violation doctrine in a wide variety of contexts. The court in *Behrens Drug Co.* held that "[s]ex based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act." *Behrens Drug Co.*, 475 F.2d at 1050. This statement is simply in keeping with the general rule, outlined *supra*, that each time an employer pays disparate wages, he violates the antidiscrimination laws. *Halferty* is similarly consistent. In that case a home-based night dispatcher for an ambulance service sued for minimum wage and overtime payments due under Section 7 of the FSLA. In determining when the statute of limitations ran on the claim, the court stated that

"[a] cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty*, 821 F.2d at 271. The obvious rationale for this holding is that each payment on its face violated the minimum wage and overtime provisions of Section 7 of the FLSA. In order to prevail on a typical Section 7 claim, an employee would have to show only that the amount on the face of his paycheck did not meet the Act's requirements. Thus, the Section 8 violation alleged by plaintiffs bears little resemblance to and is distinguishable from the type of FLSA claims involved in *Behrens Drug Co.* and *Halferty*.[5]

Accordingly, because plaintiffs' claim was not timely filed, defendant's motion to dismiss the complaint is well taken and will be granted. A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.

**Steven S. SCHOLES, etc., Plaintiff,**

**v.**

**Lawrence L. SCHROEDER, Jr., Defendant.**

**No. 90 C 4197.**

United States District Court, N.D. Illinois, E.D.

July 27, 1990.

Gary L. Prior, P.C., McDermott Will & Emery, Chicago, Ill., for plaintiffs.

---

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court has just received, by random assignment to its calendar, the Complaint filed by Steven Scholes ("Scholes"), not individually but solely as receiver for Michael Douglas, D & S Trading Group, Ltd., Analytic Trading Systems, Inc., Analytic Trading Service, Inc. and Market Systems, Inc. ("MSI") against Lawrence Schroeder, Jr. ("Schroeder"). Based on this Court's initial review of the Complaint,[1] counsel for Scholes is ordered to appear at 8:45 a.m. July 31, 1990 to explain why this Court should not consider dismissal of the Complaint and this action for lack of subject matter jurisdiction.

All of the parties for whom Scholes has been appointed receiver are, on the Complaint's own allegations, crooks who engaged in a series of securities frauds involving limited partnership interests in investment partnerships, mulcting large numbers of investors (over 300) of major sums of money ("millions of dollars")(Complaint ¶ 1). Without their having admitted that, back on November 30, 1989 all of them except MSI had entered into a consent permanent injunction in an action brought against them in this District Court by the Securities and Exchange Commission: *SEC v. Douglas*, No. 89 C 8407, assigned to this Court's colleague Honorable James Alesia. On that same date Judge Alesia also appointed Scholes (a lawyer with the law firm now acting for him in this case) "as equitable receiver for all funds, assets, choses in action or other property belonging to, in the possession of, beneficially owned by, or in the control of" the consenting defendants in that action. And on July 5, 1990 Judge Alesia entered a like receivership order as to MSI in the same case.

Each of those two receivership appointments, by their terms, granted Scholes the power to:

> institute such actions as said receiver deems necessary against those individuals, entities, corporations, partnerships, associations or incorporated organizations which the receiver may claim to have wrongfully, illegally or otherwise improperly misappropriated monies or other proceeds from investors or clients of the [parties for whom Scholes was appointed as receiver].

In the current Complaint Scholes charges Schroeder as being a fellow crook with the parties for whom Scholes has been appointed to act as receiver—that is, as someone actively engaged in each of the frauds. And each of the several counts in the Complaint asserts that the direct and proximate result of Schroeder's conduct (like the conduct of the asserted culprits for whom Scholes is acting) was to cause damages to the investors.

But the problem that this Court finds with the action, as posed in those terms, is that every claim is asserted by Scholes not really on behalf of the parties for whom he acts as *receiver* but on behalf of the defrauded *investors* themselves. Under receivership law Scholes stands in the shoes of the former and not the latter, although it is the investors and not the crooks for whom Scholes stands as surrogate who are the real parties in interest (Fed.R.Civ.P. 17(a)).

More importantly for jurisdictional purposes, the case or controversy that is spelled out in the Complaint here not only appears to be but is actually alleged as one between the investors and Schroeder, not between Schroeder and his fellow crooks.[2]

---

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

   The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. If this were viewed in the latter light instead—as a dispute between Schroeder and the persons for whose interests Scholes can properly act—it might parenthetically be noted that the in pari delicto defense, which has been approved for application under the federal securities laws in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) and which is of course also available in the common law claims in Counts IV, V and VI, would appear fatal to the action.

Whether that is perceived in Article III "case or controversy" terms or in terms of Scholes' lack of standing to bring this action (compare *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 429–34, 92 S.Ct. 1678, 1685–88, 32 L.Ed.2d 195 (1972); *Fleming v. Bank of Boston Corp.*, 127 F.R.D. 30, 31 (D.Mass. 1989)), this Court would therefore appear to lack subject matter jurisdiction.

Accordingly Scholes is ordered to appear, as stated at the outset of this memorandum opinion and order, at 8:45 a.m. July 31, 1990 to address the jurisdictional questions posed here. This Court recognizes that Judge Alesia's orders do appear on their face to grant authority for the commencement of this action, but that of course cannot control.[3] It is necessary for Scholes to explain how any such order can confer subject matter jurisdiction or standing to sue in the face of the problems identified here.

3. By definition no judicial order can create jurisdiction where none already exists in the form of the powers conferred by Congress on the federal courts—and in that respect Congress is (also by definition) limited by the constraints imposed by Article III. By the same token, no judicial order can override the provisions of the Federal Rules of Civil Procedure that also mark out the boundaries for the federal judiciary. It appears quite likely from the orders attached to the Complaint that they were prepared by the parties (the SEC as to the November 30, 1989 order, and perhaps Scholes himself as to the July 5, 1990 order), with nothing to focus Judge Alesia's attention on the subjects discussed here.