The MOOSEHEAD SANITARY DIS-
TRICT et al., Plaintiffs, Appellees,

v.

S. G. PHILLIPS CORPORATION, etc., et
al., Defendants, Appellees.

State of Maine, Appellant.

No. 79–1205.

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1979.

Decided Dec. 11, 1979.

Cabanne Howard, Asst. Atty. Gen., Augusta, Me., with whom Philip F. W. Ahrens, III, Asst. Atty. Gen., Augusta, Me., was on brief, for appellant.

Jotham D. Pierce, Jr., Portland, Me., with whom Jeffrey M. White, Portland, Me., J. William Batten, Waterville, Me., Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me. and Daviau, Jabar & Batten, Waterville, Me., were on brief, for appellee, The Moosehead Sanitary Dist.

W. John Amerling, Portland, Me., with whom David P. Ray and Jensen, Baird, Gardner & Henry, Portland, Me., were on brief, for appellee, S. G. Phillips Corp.

Michael D. Taber, Bangor, Me., with whom Gene Carter and Rudman, Winchell, Carter & Buckley, Bangor, Me., were on brief, for appellees, Johns-Manville Products Corp. and Johns-Manville Sales Corp.

S. Peter Mills, III, and Richardson, Hildreth, Tyler & Troubh, Portland, Me., on brief for appellee, Wright, Pierce, Barnes & Wyman.

Before CAMPBELL and BOWNES, Circuit Judges, and BONSAL,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant, the State of Maine, is seeking permission to intervene pursuant to Fed.R. Civ.P. 24(a) in a consolidated diversity action now pending in the Maine District Court. That action was brought by The Moosehead Sanitary District (Moosehead) against several private contractors for damages stemming from the allegedly faulty design and construction of a sewage treatment plant at Moosehead Lake near the town of Greenville, Maine. The plant has never worked properly, and Moosehead asserts that it has been abandoned. Maine bases its claim to intervention as of right on its contribution of one fourth of the $2 million construction cost of the facility. The district court denied the state's motion to intervene. We affirm.

I.

Moosehead's action has apparently not advanced beyond the pleading stage, and we must refer to the various complaints, counterclaims, third-party claims, and so forth as constituting the record to date. The parties seem to agree that the facts necessary to decision of this appeal are not in dispute.

Plaintiff-appellee Moosehead is a sanitary district organized under the laws of Maine, 38 Me.Rev.Stat.Ann. § 1061 *et seq.*, and governed by a board of trustees elected by the residents of the district. Moosehead was created in order to construct and operate a sewage system in Greenville. In October 1971, Moosehead entered into two contracts with Wright, Pierce, Barnes and

* Of the Southern District of New York, sitting by designation.

Wyman (Wright, Pierce), a Maine corporation, for design and construction supervision of a sewage system, including a collection system, pumping station, force mains and a tertiary sewage treatment plant. Moosehead contracted with S. G. Phillips Corporation (Phillips), a Vermont corporation, in December 1973 for construction of interceptor sewers, pumping stations and the treatment plant. In connection with construction of the treatment plant, Phillips purchased two flocculation-filtration units (also known as moving bed filter (MBF) units) from Johns-Manville, a Colorado corporation.[1] The MBF units were delivered to the project in early 1974 and were installed at the plant by Phillips.

In September 1976, Moosehead commenced this litigation by suing Phillips in the Piscataquis County Superior Court in Maine; $76,000 in liquidated damages was sought for Phillips' alleged failure to finish the project by the date specified in the contract. Phillips removed the action to federal court on the basis of diversity of citizenship. Moosehead then amended its complaint to add a count for breach of warranty with respect to the MBF units and breach of the construction contract. The amended complaint sought damages in excess of $2 million, alleging that the plant was essentially unworkable. (According to Maine, a new plant has since been built with additional state and federal funds.) Phillips counterclaimed against Moosehead which then brought a third-party claim

against Wright, Pierce, asserting that Wright, Pierce was liable for any claims that might be realized against Moosehead. Because both Moosehead and Wright, Pierce are located in Maine, jurisdiction was premised on the court's ancillary jurisdiction.[2]

In December 1977, Moosehead filed another action, this one against Johns-Manville for breach of warranty and negligence regarding the design, manufacture and sale of the MBF units. Damages were claimed in the amount of $3 million on each count. In each of these actions, the private defendants cross-claimed against each other. On motion of the plaintiff, the two actions were consolidated. At the preliminary pretrial conference on July 18, 1978, the State of Maine made known its intention to file a motion to intervene.

On August 1, 1978, the state moved to intervene as a party-plaintiff to assert a cross-claim against Moosehead and to assert claims against defendants Phillips and Johns-Manville. The theory of the cross-claim was that the provision of funds for the project by Maine gave rise to contractual or quasi-contractual liability on the part of Moosehead. The claims against defendants were based on the theory that Maine was a third-party beneficiary of the contracts between Moosehead and the defendants. Intervention was sought both as of right, Fed.R.Civ.P. 24(a),[3] and by permission of the court, Fed.R.Civ.P. 24(b).[4] Maine's

1. Both Johns-Manville Sales Corporation and Johns-Manville Products Corporation were sued, but there is some indication the two have merged. For present purposes, we treat Johns-Manville as one entity.

2. Wright, Pierce indicated to the district court that it intended to file a motion to dismiss for want of subject matter jurisdiction. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

3. Rule 24(a), as amended in 1966, reads as follows:
"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or

transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

4. Rule 24(b), in relevant part, reads as follows:
"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

motion was argued to a magistrate, who rejected both grounds. Intervention of right was not available, the magistrate ruled, because Maine had not shown that " 'as a practical matter' its interest will be impaired or impeded if it simply waits for the plaintiff to secure whatever recovery it can in this Court and then sues the plaintiff in state court." The magistrate also held that permissive intervention would "cause delay and . . . unnecessarily complicate the present actions."

■ The district court, after hearing, affirmed the magistrate's decision denying Maine the right to intervene under Rule 24(a).[5] The court held that Maine was not a third-party beneficiary of the contracts between Moosehead and the private contractors, and thus did not have an interest in the subject matter of the litigation sufficient to support intervention as of right. The court also found that Maine's interest in recovering from Moosehead a portion of any sums Moosehead won from the defendants would not be impaired or impeded as a practical matter if intervention were denied, and that Moosehead would adequately represent Maine's interest in ensuring an adequate recovery.

## II.

Rule 24(a) establishes four basic requirements which must be met before a party is permitted to intervene as of right:[6] (1) the application must be timely; (2) the applicant must claim "an interest relating to the property or transaction which is the subject of the action"; (3) the applicant must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest";

and (4) it must be shown that the applicant's interest will not be "adequately represented by existing parties." The district court assumed that Maine's application to intervene was timely, and as the parties do not contest this point on appeal, we also assume the timeliness requirement is met. At issue is the correctness of the district court's ruling that Maine did not meet the other three requirements.

## A.

■ Maine asserts two separate "interests" in the subject matter of this litigation. The first of these is its asserted interest in recovering against Phillips and Johns-Manville as a third-party beneficiary of the contracts between Moosehead and these parties. The district court rejected this claim, holding that Maine was a mere incidental beneficiary of the contracts and thus not entitled to maintain a suit. *See Restatement of Contracts* § 133 (1932). As this is a diversity action, we look to the law of the state for the substantive rule of decision. The issue is whether Maine is a creditor beneficiary of the contracts, and as such, able to bring suit independently to enforce them. Maine states in its brief on appeal that Maine law is "completely silent" on this point. Appellees cite the case of *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210 (Me.1973), to indicate that when faced with a third-party beneficiary question, the Supreme Judicial Court of Maine has looked to the Restatement for guidance. *See also Bartashevich v. City of Portland*, 308 A.2d 551 (Me.1973). Under the Restatement, a person who is not a party to a contract is entitled to sue on the contract only if such person is a donee beneficiary, § 133(1)(a),[7]

---

**5.** Maine did not press before the district court its motion for permissive intervention, nor has the state presented that issue on appeal. Presumably Maine is aware that permissive intervention ordinarily must be supported by independent jurisdictional grounds. *Blake v. Pallan*, 554 F.2d 947, 955–56 (9th Cir. 1977); 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1917 at 592. Here, there is no federal question present, and no diversity as between Maine and the appellees. *Compare* 28 U.S.C. § 1332(a).

**6.** As an alternative, a party may intervene as of right upon timely application if unconditionally authorized to do so by federal law. Fed.R. Civ.P. 24(a)(1). Maine does not contend this provision applies to it.

**7.** Maine does not assert that it is a donee beneficiary, nor could it, since no "purpose . . . to make a gift" appears. Restatement § 133(1)(a).

or a creditor beneficiary, § 133(1)(b). An incidental beneficiary has no cause of action on the contract. The Restatement defines a person as a creditor beneficiary "if no purpose to make a gift appears . . . and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." § 133(1)(b). The state contends that it is a creditor beneficiary because Moosehead entered into the contracts with the private defendants in order to fulfill duties Moosehead owed to Maine. According to Maine, these duties consisted in first, the obligation of Moosehead to use the state's funds only to build a sewage treatment plant, and second, the statutory obligation of the district to provide sewage treatment sufficient to protect the waters of Moosehead Lake.

 The difficulty with Maine's argument is that the state has nowhere alleged facts sufficient to support a finding that Moosehead, the promisee, intended to fulfill any duty to Maine when it entered these contracts. Moosehead strenuously denies it had any such duty. The contracts themselves make no mention of any intent to benefit Maine. Indeed, the only relevant language appearing in the contracts suggests precisely the opposite of the conclusion Maine urges on us:

> "When the United States Government or the State of Maine agree to pay all or part of the cost of the project, the work shall be subject to the inspection of the appropriate Federal or State Agency.
>
> *Such inspection shall in no sense make the Federal or State Government a party to this contract,* unless said Government is also the Owner, and will in no way interfere with the rights of either party hereunder." (Emphasis added.) [8]

Nor is Maine's proposed complaint-in-intervention of any help. The complaint merely states in a conclusory manner:

> "Plaintiff State of Maine, which provided 25 per cent of the funds with which Moosehead entered into the contract various breaches of which are set forth in paragraph 2 of Count III of plaintiff Moosehead's Amended Complaint, was a third party beneficiary to said contract."

 Appellees assert that no one can be a third-party beneficiary to a contract unless both parties to the contract intended to benefit the third party. *See Vazman S. A. v. Fidelity International Bank*, 418 F.Supp. 1084, 1086 (S.D.N.Y.1976); Restatement (Second) of Contracts § 133 (Tent. Draft 1973). Maine replies that only the intent of the promisee, in this case Moosehead, should be relevant. *See* Williston on Contracts § 356A at 836 (3d ed. 1959). Even assuming Maine is correct as to what a state court would hold on this issue, we perceive no indication of any intent on Moosehead's part to fulfill a duty to Maine or to make Maine a party to the contract. Nor are we prepared to predict that a Maine court would hold that a mere incidental beneficiary has a right to enforce a contract simply because to do otherwise might work a potential hardship on the third party. The district court did not err on this issue.[9]

### B.

Maine's second basis for asserting an interest in the lawsuit has more plausibility, although Maine is able to cite no controlling precedent nor any dispositive contract provision. Maine contends that Moosehead will be obligated under principles of contract or quasi-contract to return to Maine any sums Moosehead recovers up to the

---

**8.** Also of note is the fact that performance in this case was to be rendered to Moosehead and not to Maine. As Williston says, "It sometimes happens that a person who is neither the promisee of a contract *nor the party to whom performance is to be rendered* will derive a benefit from its performance. Such person is . . . the incidental beneficiary." (Emphasis added.)

Williston on Contracts § 402 at 1088 (3d ed. 1959).

**9.** Maine devotes one sentence in its brief to the assertion that it was the recipient in law of a warranty from Johns-Manville, and that it was "within the zone of persons reasonably to be affected by any negligence of Johns-Manville." We see no merit in either contention.

total amount contributed by Maine toward construction of the treatment plant. For Moosehead to retain the recovery would be inequitable, Maine asserts, because the taxpayers of Maine provided the funds to build a treatment plant, not to enrich the local sanitary district. While we do not purport to rule on this argument, we cannot say that Maine's point is frivolous or wholly unlikely to prevail.

■ A grant of this type entails some obligations as to the appropriate uses to which the money can be put, and perhaps also a duty to return the money if those purposes fail of accomplishment.[10] On the other hand, while Maine may have a right to get back, on some theory of equitable restitution, the funds Moosehead actually recovers, it is less clear that Maine's possible interest encompasses a right to share in the control of the litigation, at least so long as Moosehead acts in good faith. *See Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (per curiam). As already discussed, Maine is not a party to the contract; it was apparently left to Moosehead to control both the expenditure of the funds and their recovery in the event of default. Maine's interest, if any, would seem limited to recovery of funds collected by Moosehead which would, 'f allowed to remain in Moosehead's hands, constitute unjust enrichment. Given this limited interest, we agree with the district court that Maine is adequately represented by the existing plaintiff Moosehead.

■ To be sure, the adequacy of existing representation is sometimes regarded as only a minimal barrier to intervention, *see Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Nonetheless a petitioner must produce something more than speculation as to the purported inadequacy—especially where as here the petitioner's interest amounts at best to an equitable claim to proceeds as yet unrealized. Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation. To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance. *See, e. g., Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (per curiam); *Philadelphia Electric Co. v. Westinghouse Electric Co.*, 308 F.2d 856, 859–60 (3d Cir. 1962), *cert. denied*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963).

Here, there is no adversity of interest as to the ultimate objective. Moosehead filed its suit seeking up to $3 million in damages from the various private defendants. Maine wants Moosehead to collect as much as possible in order to assure Maine of a reasonable chance of enforcing a judgment against Moosehead for the $549,000 Maine put into the treatment plant project. Maine, furthermore, does not suggest that Moosehead is in collusion with the private defendants or that Moosehead's attorneys are sleeping on their oars. At most, Maine asserts that its interests and those of Moosehead diverge because Moosehead is claiming *more* damages than Maine seeks to collect. The state argues that Moosehead may be tempted to settle its claims in such a way that most of the damages are attributable to injuries for which Maine would have no claim to reimbursement.[11] Maine has provided little basis, however, for viewing this scenario as a real possibility. Maine does not say that settlement talks

10. Although not urged by Maine, and not decided by us, there conceivably could be merit to the notion that a government grant of this type gives rise to a constructive trust. *Cf.* V A. Scott, The Law of Trusts § 462 (3d ed. 1967).

11. In particular, Maine suggests that Moosehead could seek damages stemming from the increased operating costs of the new treatment plant at the expense of any recovery for the construction costs of the old plant. The state seems to believe that the equitable arguments favoring a duty to reimburse the grant funds would be weaker if the recovery were weighted in this way.

are under way or that Moosehead has indicated any such settlement is in the offing. Moosehead has vigorously asserted its intention to pursue its claims against the defendant fully. We see no reason why Maine cannot be adequately protected by instituting a timely suit in the state courts to recover against Moosehead and levying any judgment it obtains against whatever recovery Moosehead may receive in federal court.

We observe, moreover, that it would be peculiarly unsuitable for a federal court, especially in the absence of any state precedent, and any dispositive contractual document to be deciding the sort of questions the district court would eventually have to decide were Maine a party—namely, the legal and equitable obligations as between the state and one of its municipal corporations relative to the claims and funds in dispute. *Compare Allstate Insurance Co. v. Sabbagh*, 603 F.2d 228 (1st Cir. 1979). Maine has not, to date, undertaken to see whether some or all of its concerns could be litigated in advance in its own courts in the framework of a declaratory judgment or some other type of proceeding. While Maine courts cannot, of course, control federal litigation, their timely views as to the legal relations between the state and Moosehead would be entitled to great weight, and we would anticipate that a federal court would do whatever it could, consistent with its legal and constitutional obligations, to accommodate the state court's determination of the legal relationship between Maine and an entity such as Moosehead.

The state has not, in any event, demonstrated that such interests as it may properly possess will be prejudiced if Moosehead continues to control the litigation it commenced. On that basis, intervention was properly denied.

*Affirmed.*