RESOLUTION TRUST CORPORATION, as Receiver of Comfed Savings Bank, F.A., Plaintiff, Appellee,

v.

CITY OF BOSTON and Boston Rent Equity Board, Defendants, Appellees

and

Commonwealth of Massachusetts, and Massachusetts Tenants Organization, et al., Intervenor Defendants, Appellants.

Civ. A. No. 92–10560–K.

United States District Court, D. Massachusetts.

Aug. 18, 1993.

Kenneth R. Berman, A. Neil Hartzell, Sherin & Lodgen, Boston, MA, for plaintiff.

Kathryn B. Palmer, City of Boston Legal Dept., Robert A. Cohen, City of Boston Law Dept., Boston, MA, for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Plaintiff, Resolution Trust Corporation ("RTC"), as Receiver of Comfed Savings Bank, F.A., filed a complaint in this Court on March 9, 1992 seeking declaratory and injunctive relief. RTC seeks a declaration that the City of Boston's "Rental Housing Equity Ordinance" (1984 City of Boston Ordinance c. 34) ("the Ordinance") and the regulations promulgated thereunder do not apply to RTC's operations in Boston. Plaintiff contends that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(c)(2)(C) and (c)(3)(C), which regulates plaintiffs activities as receiver of ComFed, preempts the Ordinance and thereby exempts RTC from Boston rent control regulations. RTC further seeks to enjoin the Boston Rent Equity Board from attempting to enforce the Ordinance against RTC.

Now before the court are Motion of the Commonwealth of Massachusetts for Leave to Intervene and Memorandum of Law in Support (Docket Nos. 8 and 9, filed November 25, 1992); Motion of Massachusetts Tenants Organization, The East Boston Ecumenical Community Council, City Life/VIDA Urbana and Mary Altenor for Leave of Court to Intervene and Memorandum in Support (Docket Nos. 10 and 11, filed November 25, 1992); and Plaintiff's Opposition to Motions of Tenant Groups, Tenant, and Attorney General to Intervene (Docket No. 20, filed December 21, 1992).

Five applicants seek to intervene of right pursuant to Fed.R.Civ.P. 24(a)(2) or, in the alternative, permissively pursuant to Fed. R.Civ.P. 24(b)(2): Massachusetts Tenants Organization ("MTO"), City Life/Vida Urbana ("CLVA"), and East Boston Ecumenical Community Council ("EBECC"), non-profit advocacy groups that work to protect tenants' rights in Boston and other parts of Massachusetts ("the Tenant Groups"); Mary Altenor, a tenant of RTC; and the Commonwealth of Massachusetts (represented by its Attorney General).

Plaintiff opposes all five applicants' motions to intervene of right, arguing that (1) the applicants lack a sufficient interest in the original dispute, (2) denial of intervention would not impair or impede the ability of the movants to protect their alleged interests, and (3) the existing defendants adequately protect applicants alleged interests. Plaintiff also opposes all five applicants' motions to intervene permissively, arguing that (1) the applicants have no independent bases for jurisdiction and (2) there is no actual case or controversy between any applicant and the plaintiff.

### I. Intervention of Right

A party must meet four requirements in order to intervene of right pursuant to Fed.R.Civ.P. 24(a)(2):

First, the application must be timely. Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest. Fourth, the applicant must show that the interest will not be adequately represented by existing parties.

*Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir.1989).

The First Circuit follows the general reading of *Trbovich v. United Mine Workers,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), that "[a]n intervenor need only show that representation may be inadequate, not that it is inadequate." *Conservation Law Foundation of New England, Inc. v. Mosbacher,* 966 F.2d 39, 44 (1st Cir.1992) (citing *Trbovich,* 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10).

### A. The Commonwealth of Massachusetts

Plaintiff argues that the court should deny the Commonwealth's motion to intervene of right because the Commonwealth does not meet the second, third and fourth Rule 24(a)(2) requirements. Because I conclude that the Commonwealth does not meet the "inadequate representation" requirement of Rule 24(a)(2), the Commonwealth cannot intervene of right in this action.

The First Circuit has stated that "[w]here the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation. To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *Moosehead Sanitary District v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979) (citations omitted). As the Attorney General notes, the Commonwealth of Massachusetts and the City of Boston have "substantively *identical*" disputes with RTC. (Commonwealth's Mem. at 9, emphasis in the original.) The Attorney General further notes that "[h]is defense is substantially identical to that of the City of Boston and Boston Rent Equity." (*Id.* at 13–14.) Thus, the Commonwealth and the City share the same "ultimate goal" in the context of this suit: to establish that FIRREA does not preempt the Boston rent control Ordinance. Therefore, the City presumptively represents adequately the interests that the Commonwealth and its Attorney General represent.

■ The Commonwealth has not overcome the presumption of adequate representation. The Commonwealth has not claimed that the City's interests are in any way adverse to the Commonwealth's, that the City is in collusion with the private plaintiff, or that the City's attorneys are "sleeping on their oars." *Moosehead,* 610 F.2d at 54.

The Commonwealth argues only that the City inadequately represents the Commonwealth's interest because the City represents "only a fraction of Commonwealth citizenry." (Commonwealth's Mem. at 14.) But the fact that the City represents fewer than all the citizens of the Commonwealth does not indicate inadequate representation as explained by the First Circuit. In *Moosehead,* the court noted that the inadequacy of representation must be "as to the ultimate objective." *Moosehead,* 610 F.2d at 54.

The City does not formally represent most Commonwealth citizens and is not motivated to defeat RTC's claim of immunity from the Ordinance in order to assure that similar current or future rent control ordinances throughout the Commonwealth will protect tenants renting from receivers. In that sense the City's representation of the Commonwealth is not complete; yet, as to the ultimate objective that the City is promoting, the City represents the same interest in the outcome of this case that the Commonwealth is asserting, and the City may be found to do so adequately. To show an entitlement to intervene, the Commonwealth must show that the City's representation of Commonwealth citizens may be inadequate in this latter sense, and not merely that the Commonwealth represents a larger number of citizens having this same interest.

In *Moosehead,* for example, the First Circuit determined that Moosehead, a municipal corporation, adequately represented Maine's interest that Moosehead collect as much as possible against the defendant in the main action, even though Maine would later claim part of those damages against Moosehead. Even though Moosehead did not formally represent Maine's interest fully, because (and in the sense that) Moosehead did not wish to collect damages so that Maine could later collect them from Moosehead, still

Moosehead adequately represented Maine's interest in relation to Maine's ultimate objective within the context of the original suit: that Moosehead "collect as much as possible." *Moosehead,* 610 F.2d at 54.

In fact, in the case now before this court, the City represents the interest of the Commonwealth in a more nearly complete sense than Moosehead represented Maine's interests: in *Moosehead* Maine speculated that "its interests and those of Moosehead diverge because Moosehead ... may be tempted to settle its claims in such a way that most of the damages are attributable to injuries for which Maine would have no claim to reimbursement." *Id.* at 54 (footnote omitted). The Commonwealth does not present even such a hypothetical circumstance under which its interests diverge from those of the City in the context of the ultimate objective each might pursue in this case.

## B. The Tenant Groups

■ Because I conclude that the Tenant Groups have not shown that the defendants may inadequately represent their interests, they cannot intervene of right.

In *United Nuclear Corp. v. Cannon,* 696 F.2d 141 (1st Cir.1982), the Conservation Law Foundation of New England, Inc. ("CLF"), an environmental interest group, appealed the district court's denial of its motion to intervene of right under Rule 24(a)(2) on the side of the state in an action brought by the United Nuclear Corporation challenging the constitutionality of a Rhode Island statute. The First Circuit affirmed the district court on two separate grounds, one of which was that the state adequately represented CLF's interests. The court reasoned from the principle that "[t]he state is charged with representing the public interest, and one consequence is that a prospective intervenor that basically asserts the public interest faces a presumption that the state's representation of the public interest will be adequate." *United Nuclear Corp.,* 696 F.2d at 144 (citations omitted). The court determined that CLF faced that presumption because it "assert[ed] essentially the public interest, rather than a personal interest." *Id.*

To the extent that tenant interest groups assert a public interest in support of their position, they are in a position analogous to that of the proposed intervenors in *United Nuclear Corp.* Therefore, like CLF, the Tenant Groups face a presumption that the City adequately represents these interests.

The Tenant Groups fail to overcome this presumption. In *United Nuclear Corp.* the First Circuit held that CLF did not overcome this presumption because (1) it had the "same argument" as the state, and (2) the state appeared "ready, willing, and able to vigorously defend" its case. *United Nuclear Corp.*, 696 F.2d at 144. Similarly, the Tenant Groups have the same argument as the City: RTC must abide by the Ordinance because FIRREA does not preempt it. Also, the Tenant Groups have not alleged nonfeasance by the government defendants.

■ To the extent that the Tenant Groups claim to represent some other, private interest, they have not shown it to be an interest cognizable under Rule 24(a)(2). The Tenant Groups argue that, besides their interest in promoting the housing rights of their clients and of Massachusetts tenants generally, they have an interest in preserving their own resources, which will be depleted by a ruling against the City because they will be "forced to utilize scarce resources in assisting tenants" whom the rent control law would consequently not protect. (Tenants Groups' and Ms. Altenor's Mem. at 2.) The First Circuit has stated explicitly that an "interest" under Rule 24(a)(2) must "bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." *Travelers Indem.*, 884 F.2d at 638.

The Tenant Groups have voluntarily chosen to provide a service to Massachusetts or Boston tenants. A suit that may adversely affect the interests of these tenants and thus create more of a need for these organizations' services has neither a sufficiently close nor a direct effect on these organizations. First, the effect would not stem as much from the decision in the case as from tenants' increased need for housing-related legal assistance, which may be one consequence of a decision for RTC. Second, the effect is completely contingent upon the extent to which the organizations choose to increase the assistance that they provide.

## C. Mary Altenor

■ A private citizen seeking to intervene on the side of a government agency has a lower burden than another government entity or a public interest group to show that the existing government party, which represents the public interest, does not adequately represent her interest. But this factor is not dispositive in the First Circuit, and the intervenor must demonstrate some concrete manifestation of governmental interest divergent from her own in order to establish that the government may inadequately represent her interest. Mary Altenor has failed to make that showing, and so cannot intervene of right.

■ In *Conservation Law Foundation of New England, Inc. ("CLF") v. Mosbacher*, 966 F.2d 39 (1st Cir.1992), the First Circuit noted that other circuits have been suspicious of how well a government entity can represent any individual's interests. In *Dimond v. District of Columbia*, 792 F.2d 179, 192–193 (D.C.Cir.1986), for example, the court "pointed out [that] a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity. In that instance, the agency might find itself in a conflict of interest." *CLF*, 966 F.2d at 44–45. The First Circuit in *CLF* also cited *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir.1977), to support the proposition that "an agency seeking to protect both the public interest and the interest of a private intervenor undertakes a 'task which is on its face impossible.'" *CLF*, 966 F.2d at 45 (citing also *New York Public Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351–52 (2d Cir. 1975)). Although the court cited these D.C., Tenth, and Second Circuit decisions for the general proposition that government entities do not represent individual interests well, the court had specifically noted earlier in the opinion, in the context of discussing Rule 24(a)(2)'s interest requirement, that the First

Circuit has not adopted the "liberal approach to intervention" of the Courts of Appeals for the Second, Sixth, Tenth, and D.C. Circuits. *CLF*, 966 F.2d at 41–42. The court also acknowledged that "in other cases some courts have found representation [of a private interest] by a public agency to be adequate," though it decided that the circumstances of the case at hand "[did] not appear to justify such a conclusion." *Id.* at 45. Thus, according to the First Circuit, an individual has not demonstrated that the current governmental party's representation of her interest may be inadequate simply by virtue of the potential divergence between government and private interests.

In each case that the First Circuit cited in its *CLF* opinion to illustrate how intervenors can demonstrate that a government agency may inadequately represent their interests, the intervenor had demonstrated how their interests actually diverged from the existing governmental party's interests: (1) In *Moosehead*, the court "implied that evidence that parties are 'sleeping on their oars' or 'settlement talks are underway' may be enough to show inadequacy." *CLF*, 966 F.2d at 44 (citing *Moosehead*, 610 F.2d at 54–55); (2) In *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416 (10th Cir.1984), the court "found the government's failure to file a responsive pleading and its agreement to a consent decree 33 days after the suit was filed sufficient to prove inadequate representation." *CLF*, 966 F.2d at 44 (citing *Sanguine*, 736 F.2d at 1419); (3) In *Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C.Cir.1977), governmental representation was not adequate because "differences about a timetable [for the implementation of a settlement agreement] posed the clear possibility of disparate interests [of a regulatory agency and regulated industries]." *CLF*, 966 F.2d at 44 (citing *Costle*, 561 F.2d at 912–13).

In *CLF* itself, the court observed three concrete manifestations of divergent interests: (1) The governmental entity (the Secretary of Commerce) charged with regulating the intervening fishing groups was in the process of negotiating a consent decree which, if "ultimately effective, [would subject the fishing groups] to even more stringent rules than those [then] in effect." *CLF*, 966 F.2d at 44. (2) The Secretary in *CLF* "did not file an Answer to [CLF's] complaint, but instead accepted the consent decree which provides for virtually all the relief sought." *Id.* (3) The court determined that "the Secretary's candor in taking no position on the petition for intervention" supported the "[impression] that the Secretary is less than wholeheartedly dedicated to opposing [CLF's] aims." *Id.*

Mary Altenor, on the other hand, argues only that the potential divergence of her personal interest from the public interest of the City shows that the City's representation of her interest may be inadequate. But, as the First Circuit has indicated in *CLF*, such a logical possibility of divergence, without any indication of actual divergence, does not suffice for the purposes of intervention of right. The First Circuit stated explicitly in *Moosehead* that "a petitioner must produce something more than speculation as to the purported inadequacy [of representation]." *Moosehead*, 610 F.2d at 54. Yet Ms. Altenor presents only potential causes and manifestations of a possible future divergence of interest to argue that the City may represent her interest inadequately: (1) the type of interest she has in the outcome of this case—financial—differs from the type that the City has—law enforcement and jurisdictional, (Tenants Groups' and Ms. Altenor's Mem. at 11), and (2) the City might settle with RTC in exchange for a promise that RTC will sell the properties in question quickly, with no guarantee that, in the meantime, RTC will treat Ms. Altenor as the Ordinance would require. (*Id.* at 13.) These speculative arguments do not satisfy the inadequate representation requirement in the First Circuit.

## II. Permissive Intervention

 "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." Wright & Miller § 1913 at 376–7 (cita-

tions omitted). Rule 24(b)(2) instructs that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Taking account also of Fed.R.Civ.P. 1, which requires courts to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action," for the reasons explained below I find it appropriate in this case, in the exercise of discretion, to deny permissive intervention of the Commonwealth, the Tenant Groups, and Mary Altenor.

RTC's complaint presents a federal challenge to a Boston ordinance only. Of course, the Commonwealth has a legitimate interest in a judicial determination that federal law does not preempt the Ordinance, because if it does, that fact will correspondingly reduce the authority of the state enabling legislation. *See* discussion, *supra*, part I.A. The First Circuit stated (though in dicta) in *International Paper Co. v. Town of Jay, Me.*, 887 F.2d 338 (1st Cir.1989), that a state seeking to defend a statute "against a challenge based on federal law" would have an independent basis for federal jurisdiction to qualify for permissive intervention pursuant to Rule 24(b)(2)'s second sentence:

> When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.

*International Paper*, 887 F.2d at 345–47. Even if the Commonwealth does qualify for permissive intervention under this principle, however, it has presented no creditable argument that its status as an intervenor-defendant would in any way reshape the issues in this case or contribute to its just resolution. Thus, the Commonwealth has not shown any justification for the delay and added demands on resources of the court and the parties that its intervention would be likely to cause.

Mary Altenor and the Tenant Groups arguably satisfy the permissive intervention requirement stated in the first sentence of Rule 24(b)(2), which allows intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." But even if they do satisfy this requirement, neither has presented any new defenses or indicated any respect in which their presence as parties would increase the likelihood of a just, speedy, and efficient outcome. I thus conclude that the delay and additional costs their presence as defendants would create would be a needless and ineffectual sacrifice.

Moreover, other means are available for the court to receive the benefit of any perspectives or arguments the proposed intervenors may wish to advance in this case. The Commonwealth, the Tenant Groups, and Mary Altenor may be allowed to express their views and arguments in *amicus curiae* briefs. As this case proceeds to disposition, each may at any point in its progress file a timely motion for leave to submit an *amicus* brief. Unless opposed, such a motion will be allowed. If opposed, I will consider the grounds of opposition before acting on the motion.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) The court denies the Motion of the Commonwealth of Massachusetts for Leave to Intervene without prejudice to the submission of a motion for leave to file an *amicus* brief.

(2) The court denies the Motion of Massachusetts Tenants Organization, The East Boston Ecumenical Community Council, City Life/VIDA Urbana and Mary Altenor for Leave to Intervene without prejudice to the submission of a motion for leave to file an *amicus* brief.

(3) A conference to schedule proceedings for expeditious disposition of this case is set for 4:00 p.m., October 8, 1993.