INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Local Union No. 404 and Maureen Rizzolo, as she is Fund Manager for Teamsters Health Services and Insurance Plan of Local 404, Plaintiffs,

v.

J.F. PARTYKA & SON, INC., Partyka Resource Management Companies, Inc. and Partyka Resource Management Company, Defendants.

Civ. A. No. 97–30163–MAP.

United States District Court,
D. Massachusetts.

Dec. 12, 1997.

Matthew E. Dwyer, Christine L. Nickerson, Dwyer & Jenkins, P.C., Boston, MA, for Plaintiffs.

Joseph W. Ambash, Gerald M. Slater, Day, Berry & Howard, Boston, MA, for Defendants.

Mark E. Draper, Michael R. Siddall, Annino, Draper & Moore, P.C., Springfield, MA, for Movants.

*MEMORANDUM AND ORDER WITH REGARD TO MOTION TO INTERVENE (Docket No. 03)*

NEIMAN, United States Magistrate Judge.

Before the court is a motion to intervene filed pursuant to Fed.R.Civ.P. 24 by John A. Cady and twenty other individuals employees (collectively "Employees"), all of whom are members or former members of the International Brotherhood of Teamsters, Local Union No. 404 (the "Union") and former employees of J.F. Partyka & Son, Inc., Partyka Resource Management Companies, Inc. and Partyka Resource Management Company (collectively "Partyka" or "Defendants"). The Union, together with Maureen Rizzolo, Fund Manager For Teamsters Health Services and Insurance Plan of Local 404 (collectively "Plaintiffs"), and Partyka oppose the

Employees' motion. For the reasons set forth below, the Employees' motion to intervene is denied.

### PROCEDURAL AND FACTUAL BACKGROUND

On or about September 13, 1995, the Union entered into a collective bargaining agreement ("Agreement") with Partyka. Immediately thereafter, on September 20, 1995, Partyka sold its waste business to United Waste Systems, Inc. ("United") and, consequently, informed its twenty-four employees, the twenty-one before the court as well as three other individuals, that they were terminated. In response, the Union filed a grievance on October 3, 1995, claiming that Partyka violated the Agreement when it failed to require United to recognize the Union and assume the wage and benefit obligations of the Agreement. On January 11, 1996, the Union filed a complaint in this court seeking to compel Partyka to arbitrate the dispute. (*See* Civil Action No. 96–30009–MAP.) In March of 1996, Partyka agreed to binding arbitration and the Union agreed to dismiss its complaint.

In September of 1996, after Partyka stipulated that it had violated the Agreement, hearings were held before an arbitrator to determine the appropriate remedy. Both the Union, representing all twenty-four employees, and Partyka presented witnesses, documentary evidence and briefs in support of their respective positions. On January 24, 1997, the arbitrator found in favor of the Union and issued a "make whole" award against Partyka. The arbitrator ordered "[t]hat Partyka will make former Partyka employees 'whole' for all lost wages and benefits, including Pension and Health Services and Insurance Plan contributions, for the period September 20, 1995, through November 18, 1996."

The Union and Partyka were unable to agree on the appropriate method to calculate the amounts due each employee pursuant to the arbitrator's award. The Union was also unable to obtain a complete copy of the employees' records from Partyka's successor company, United. After Partyka unsuccessfully sought to have the arbitrator clarify what it characterized as ambiguities in his decision, the Union, on July 29, 1997, filed the instant action against Partyka. The Union seeks to enforce the award pursuant to Section 301 of the National Labor Relations Act, 29 U.S.C. § 185. The Employees' motion to intervene was filed on October 2, 1997.

### DISCUSSION [1]

In opposition to intervention, the Union argues first that, pursuant to the Labor Management Relations Act, it is the solitary collective bargaining agent and the exclusive representative of the bargaining unit with respect to arbitration 29 U.S.C. § 159(a). *See also Acuff v. United Papermakers and Paperworkers, AFL–CIO,* 404 F.2d 169, 172 (5th Cir.1968). Accordingly, the argument proceeds, it is within the sole purview of the union to maintain suit pursuant to section 301 of the Act to enforce the Agreement since the collective rights of its members are at stake. *See* 29 U.S.C. § 185; *see also Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Employees are precluded from maintaining an independent action to enforce the arbitration award, the Union maintains, because they are not parties to either the collective bargaining agreement or the Union–Partyka arbitration. *See Cleveland v. Porca Co.,* 38 F.3d 289, 296–97 (7th Cir.1994) (citing *Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1244 (7th Cir.1990)). *See also Sear v. Cadillac Auto. Co. of Boston,* 654 F.2d 4, 7 (1st Cir.1981) (discussing the duty of fair representation in the context of final and binding grievance arbitration); *Katir v. Columbia Univ.,* 15 F.3d 23, 24–25 (2d Cir. 1994) (discharged university research assistant lacked standing to challenge arbitration proceeding when he was represented by a union and did not assert a claim against the union for breach of the duty of fair representation); *Harris v. Chem. Leaman Tank*

---

**1.** Although both the Union and Partyka oppose intervention the court addresses the opposition from the point of view of the Union only.

*Lines, Inc.,* 437 F.2d 167, 171 (5th Cir.1971) (individual employees have no standing under section 301 to set aside an arbitration award); *O'Sullivan v. Getty Oil Co.,* 296 F.Supp. 272, 275 (D.Mass.1969) ("in the absence of bad faith or arbitrary or discriminatory conduct on the part of the union, the employee is bound by the results of the grievance procedure") (citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)); *Brown v. Sterling Aluminum Prod. Corp.,* 365 F.2d 651, 657 (8th Cir.1966) (individual employees lack standing because alleged breaches were violations of collective rights of entire bargaining unit).

The Union concedes that, despite these general principles, individual union members are not foreclosed from being a party to a suit in all situations. For example, individual union members may *defend* against a suit to vacate an arbitration award in favor of their union when the union chooses not to but otherwise acquiesces in the employees' action. *Martin,* 911 F.2d at 1244. As all the present parties agree, this is not the situation here. In addition, the Union concedes that employees may challenge or confirm an arbitration award, "but only if the employees state a claim for a section 301 fair representation case and the challenge or confirmation is integral to the case." *Id.* Again, the parties acknowledge that the Employees do not assert such a claim in their proposed complaint against the Union.

■ Although the court finds the Union's analysis meritorious with regard to a union member's lack of standing to sue in most instances, the decisions upon which the Union relies do not address the discrete right of a union member to seek intervention, in appropriate circumstances, pursuant to Fed. R.Civ.P. 24. Rule 24 allows for intervention in pending litigation either as a matter of right or by permission of the court. Subsection (a) of the rule, in applicable part, provides for intervention as a matter of right,

when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect

that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). Subsection (b) of the rule, on the other hand, allows for permissive intervention at the discretion of the court when "an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). Subsection (b) provides further that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). In the case at bar, the Employees seek intervention pursuant to Rule 24, both as a matter of right and at the discretion of the court.

There does not appear to be a significant dispute that the Employees have an interest in the subject matter of this action. The arbitrator ordered Partyka to make its former employees whole for all lost wages and benefits. Accordingly, there is no dispute that the Employees, together with the three other former employees of Partyka, are the intended beneficiaries of the arbitrator's award. As a result, the Employees meet at least the threshold requirements of Rule 24(a). There is, however, a relatively significant dispute as to whether or not the Employees' interests are adequately represented by the Union. In this regard, the court finds the Union's argument far more compelling.

■ It is telling that the Employees acknowledge, indeed assert, that their claims "against Partyka are identical to the Union's claim against Partyka." (Mem.Supp.Mot. to Int. (Docket No. 03) at 5.) While the Employees make that assertion in support of their contention that there would be no prejudicial impact on the existing parties should their motion to intervene be allowed, their asseveration proves too much. Indeed, where, as here, parties seeking to intervene have the same ultimate goal as a party already in the lawsuit, the court is advised to apply a presumption of adequate representation. *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979). "To overcome that presumption, a petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *Id.* at 54.

*See also Resolution Trust Corp. v. City of Boston,* 150 F.R.D. 449, 451 (D.Mass.1993) (parties not entitled to intervene as defendants when they had same ultimate goal as existing defendant and substantively identical dispute with plaintiff). The Employees' petition falls short in all these respects.

If anything, the Union has "pursued the grievance with energy and indeed, in large measure, with success." *Acuff,* 404 F.2d at 171. As the facts make clear, the Union negotiated the original Agreement, filed a grievance on behalf of the bargaining unit against Partyka, filed a federal lawsuit to enforce arbitration, procured a stipulation that Partyka had violated the Agreement, forced Partyka to enter into arbitration to determine the appropriate remedy, achieved complete success at arbitration and, when Partyka balked at the scope of the remedy and failed to provide the necessary documents, filed the instant action in a timely fashion.

In addition, the dispute between the Union and Partyka appears to be heading quickly toward a resolution. Since filing this lawsuit, the Union has sought and received supporting documentation and, as counsel represented at oral argument, is in the process of reviewing that information to make the necessary calculations. In these circumstances, "[i]t would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union members immediately concerned." *Id.* Cf. *Ayala v. Union de Tronquistas de Puerto Rico, Local 901,* 74 F.3d 344, 345 (1st Cir.1996) ("disaffected employees do not possess an absolute right to have their union shepherd a complaint through the grievance process to the bitter end.")

Given the efforts of the Union to date, it is little wonder that the Employees have not asserted that the Union has violated its duty of fair representation. The Employees' desire to intervene appears, instead, to arise out of a frustration with their not yet receiving the benefits mandated by the arbitration award. The Employees likewise believe that their payroll records—copies of which were provided to them voluntarily by the Union after the Union obtained the records from United—are not sufficient to make the necessary payment calculations. Accordingly, the Employees seek to intervene "in order to review the payroll and other employment records necessary to calculate the amount of the Award and thereby insure the accuracy of the sum paid by Partyka pursuant to the Award." (Mem.Supp.Mot. to Int. at 5.)

The court recognizes the Employees' frustrations, compounded perhaps by problems in communication between the Union and various members. However, such frustration does not justify intervention. As detailed above, the Union has more than adequately represented the Employees' interests to date and has proven itself capable of making the necessary calculations and appropriately involving the twenty-four employees in that process. The court has no reason to question the Union's representation at oral argument that the types of wages and benefits which the Employees claim are due are the very wages and benefits which will be paid to them in due course. The Employees' assertion that they need to intervene because of some disagreement between them, the Union and Partyka with respect to the division of the arbitration award is, in the court's estimation, without adequate foundation. To the extent that there is a remaining issue between the Union and Partyka, it concerns matters which are unrelated to benefits due the Employees themselves.

Finally, the Employees' isolated reliance on *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), is unavailing. In *Trbovich,* the Supreme Court held that an individual union member could intervene in a suit brought by the Secretary of Labor under the Labor Management Reporting and Disclosure Act to set aside the election of union officers. The Court based its finding on the fact that the Secretary had a potential conflict of interest between the duty to enforce the union members' rights against the union and the duty to protect the "vital public interest in assuring free and democratic un-

ion elections that transcends the narrow interest of the complaining union member." *Id.* at 538–39, 92 S.Ct. at 636. Although the First Circuit follows the general rule of *Trbovich* that "[a]n intervenor need only show that representation *may be* inadequate, not that it *is* inadequate," *Conservation Law Found. of New England, Inc. v. Mosbacher,* 966 F.2d 39, 44 (1st Cir.1992) (emphasis added), here there is no doubt about the actual adequacy of the Union's representation. Moreover, for all the reasons described, there is no inherent conflict of interest between the Union and the Employees.

Accordingly, the Employees cannot intervene in the instant action as a matter of right. In addition, the court declines to permit intervention as a matter of discretion. *See In re Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1019, 1023 (D.Mass.1989) (describing factors to be considered when addressing permissive intervention). The court finds that the Employees' presence will not materially contribute to the just resolution of this matter. In addition, in light of the added demands on the resources of the court and the parties, intervention is not merited at this time.

### CONCLUSION

The motion to intervene is DENIED without prejudice. Should later developments substantially alter the landscape, the Employees may renew their motion.

IT IS SO ORDERED.