Beverly C. DAGGETT, et al., Plaintiffs,

v.

Peter B. WEBSTER, et al., Defendants.

No. CIV.A. 98–223–B–H.

United States District Court,
D. Maine.

May 4, 1999.

Nathaniel M. Rosenblatt, Farrell, Rosenblatt & Russell, Bangor, ME, Mark J. Lopez, American Civil Liberties Union, New York City, for Plaintiffs.

Daniel M. Snow, Pierce Atwood, One Monument Square, Portland, ME, James Bopp, Jr., Eric C. Bohnet, Bopp, Coleson & Bostrom, Terre Haute, IN, for Consolidated Plaintiffs.

Paul Stern, Phyllis Gardiner, Andrew S. Hagler, Assistant Attorney General, Augusta, ME, for Defendants.

John R. Brautigam, Arn H. Pearson, Maine Citizen Leadership Fund, Portland, ME, Glenn J. Moramarco, Brennan Center for Justice, New York City, for Intervenor–Defendants.

**ORDER ON MOTIONS**

HORNBY, Chief Judge.

The motion to allow supplemental briefing is **GRANTED**, but the motion to intervene is **DENIED**.

Upon remand, I find explicitly that the Attorney General is fully able to provide adequate representation in defending the constitutionality of those provisions of Maine's campaign financing law at issue in this litigation, including the Maine Clean Election Act, and that the Attorney General fully intends to do so. This is not based upon any restrictive reading of the *Moosehead* decision or the three factors listed there. *See Moosehead Sanitary District v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979) (writing that with regard to intervention as of right, to overcome the presumption of adequate representation when the proposed intervenors share the "same ultimate goal as a party already in the suit," the proposed intervenors must "ordinarily" show "adversity of interest, collusion, or nonfeasance." (citations omitted)). Instead, the representation is completely "adequate" by any imaginable measure.[1] Everything the Attorney General's Office has done in this case demonstrates more than adequate representation.

On permissive intervention, the prospective intervenors have argued that it would look fairer if the people who worked so hard to bring this law into existence were allowed formally to be parties to the case[2]; that judicial economy is not really threatened because the time limits and schedule arrived at by agreement and now imposed by the court will prevent matters from dragging out and because I have authority to prevent redundant discovery or testimony; and that the plaintiffs' lawyers have election law and expert witness experience that the Attorney

---

1. The word "adequate" is a misnomer here. In defending state legislation, Maine's Attorney General's Office typically performs in the highest professional manner, equal to the skill and performance of private lawyers. In a single instance where the record demonstrated that the Attorney General was not prepared to fully and effectively defend the constitutionality of a state statute, I allowed intervention by the Governor of Maine. Findings of Fact and Conclusions of Law, *Gallagher v. Diamond*, Civ. No. 90–0256–B at 10 (D.Me. Oct. 26, 1990).

2. Although the would-be intervenors are described as candidates for election, some of their lawyers work for an organization that was involved in getting the law on the books as a ballot initiative.

General's Office lacks, a lack that would be remedied by the experience of the would-be intervenors' lawyers.

■ So far as the appearance of fairness is concerned, I emphasize that this initiative is no longer the creation or special project of a group of concerned citizens. Once the voters approved it, it became State Law vested with the interests of the entire State and entitled to a full defense by the Attorney General on behalf of all the citizens of the state. Its constitutionality is not tied to the efforts of those who pressed the ballot initiative. The adversarial system does not require that the constitutionality of state laws be fought out only between private citizens or groups who support them and private citizens or groups who oppose them. Instead, the Attorney General is the proper legal representative of the state's interest in defending the validity of its laws.[3]

■ On the issue of judicial economy, every trial judge knows that where there are multiple parties with the same interest on one side of a case, it is well-nigh impossible to restrain the multiple lawyers from duplicative discovery, examination and cross-examination. It is not a matter of bad faith on the lawyers' part—it is simply every lawyer's competitive belief that he/she can do a better job than the colleague who just sat down, coupled with the natural desire to show the client that the lawyer is working hard for the fee. Even with Federal Rule of Evidence 403, a judge cannot realistically stop the repetition. It is better—if the option exists— simply not to create the occasion for unnecessary repetition in the first place. (The filings in this case already demonstrate that these lawyers are not immune.)

■ On skill and resources, I have already expressed my confidence that the Attorney General's Office has all the ability and resources needed to defend this statute fully. Advantages that lawyers can gain from litigating similar cases in other states tend to be overrated. In saying so, I mean no disrespect to the lawyers for the plaintiffs and the proposed intervenors who obviously are very capable lawyers. But we are dealing here with Maine's statute, not that of some other state; the Supreme Court case law and the circuit court case law that govern the issues are easily identifiable; and the importance of the expert witnesses is still to be determined (as is the very admissibility of expert testimony in this case that ultimately involves the constitutionality of the statutes). Finally, it is apparent from the materials filed to date and from what was said at oral argument that the Attorney General's Office is already taking full advantage of the would-be intervenors' resources, listing the people they suggest as experts, using their data, etc. It is a mark of the professionalism of the would-be intervenors' lawyers that they made it clear that they will continue to make available all resources even if their motion to intervene is denied.

I previously gave the would-be intervenors *amicus curiae* status. *See Daggett v. Webster,* 34 F.Supp.2d 73, 76 (D.Me.1999), *vacated by Daggett v. Commission on Governmental Ethics and Election Practices,* 172 F.3d 104, 113–14 (1st Cir.1999). As Judge Boudin pointed out in the First Circuit's ruling on appeal, an *amicus* can ordinarily present "'legislative facts.'" *Daggett v. Commission on Governmental Ethics and Election Practices,* 172 F.3d 104, 112–13 (1st Cir.1999). Such "legislative facts" are often the most important "facts" in this type of case. I now add the following, which apparently some courts characterize as "amicus plus" status.

1. Notice and service of all documents and events shall be given to the would-be intervenors' counsel just as if they were parties in the case;

2. If there are witnesses at trial or deposition where the Attorney General's Office is willing to let the would-be intervenors' lawyer conduct the examination or cross-examination in place of an Assistant Attorney General, that is permitted. What is not permitted is examination or cross-examination by both; and

---

3. The United States Code recognizes this unique role by requiring notice to the State Attorney General and by granting a right of intervention to the State when a state law's constitutionality is called into question in even a private dispute. 28 U.S.C. § 2403(b).

3. I expect that, as appropriate, the Attorney General's Office will take full advantage of the would-be intervenors' offers of resources, evidence or assistance where to do so will help the Attorney General to defend the constitutionality of the statutes. Furthermore, the motion to intervene can be renewed if and when the would-be intervenors have evidence that the case is not being fully and properly presented by the Attorney General.

So Ordered.